**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **MARY WAGES BOBO,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 2:07cv482-MHT** |
| | ) | |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**UNITED STATES' RESPONSE TO § 2255 MOTION**

COMES NOW the United States of America, by and through, Leura G. Canary, United

States Attorney, and, in compliance with this Court's order, responds to Petitioner Mary Wages

Bobo's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, Or Correct Sentence By a Person

In Federal Custody, as follows:

**I.  PROCEDURAL HISTORY AND RELEVANT FACTS**

On June 29, 2005, a grand jury for the Middle District of Alabama returned a four-count

indictment against Mary Wages Bobo ("Bobo") and co-defendant Charles David Bobo d/b/a

Horn Hill Grocery, and co-defendant Jessica A. Singleton.  See Attachment A, the indictment.

Count 1 charged that, beginning in and about April, 2000, and continuing to on or about May 1,

2003, the exact dates being unknown to the Grand Jury, in Covington County, Alabama, and

elsewhere, the defendants knowingly and willfully combined, conspired, confederated, and

agreed together and with other persons known and unknown to manufacture five grams or more

of methamphetamine, a Schedule II Controlled Substance, in violation of 21 U.S.C. § 841(a)(1)

1

and § 846.  Count 2 of the indictment charged that, on April 10, 2003, Mary Wages Bobo d/b/a

Horn Hill Grocery, while aiding and abetting each other and others known and unknown to the

Grand Jury, knowingly and intentionally possessed and distributed pseudoephedrine, a Schedule I

listed chemical, knowing and having reasonable cause to believe that the listed chemical would

be used to manufacture a controlled substance in violation of 21 U.S.C. § 841(c)(2) and 18

U.S.C. § 2.  Count 3 of the indictment charged that, on April 24, 2003, Charles David Bobo and

Mary Wages Bobo, d/b/a Horn Hill Grocery, and Jessica Singleton, while aiding and abetting

each other and others known and unknown to the Grand Jury, knowingly and intentionally

possessed and distributed pseudoephedrine, a Schedule I listed chemical, knowing and having

reasonable cause to believe that the listed chemical would be used to manufacture a controlled

substance, in violation of 21 U.S.C. § 841(c)(2) and 18 U.S.C. § 2.  Count 4 of the indictment

charged that, on May 1, 2003, Charles David Bobo, d/b/a Horn Hill Grocery, while aiding and

abetting each other and others known and unknown to the Grand Jury, knowingly and

intentionally possessed and distributed pseudoephedrine, a Schedule I listed chemical, knowing

and having reasonable cause to believe that the listed chemical would be used to manufacture a

controlled substance, in violation of 21 U.S.C. § 841(c)(2) and 18 U.S.C. § 2.  The indictment

also contained a forfeiture allegation.

     On July 13, 2005, Attorney Tiffany Bullard McCord entered a notice of appearance on

behalf of petitioner Mary Wages Bobo.[1]  The Order on Arraignment scheduled the trial to

---

[1]     Defendant Counsel's notice of appearance is Document 21, and is not included as
an exhibit.  In addition, Defense counsel filed a motion to continue the pretrial conference (Doc.
36), a motion to sever the defendant's case (Doc. 47), and a motion to continue the trial date
(Doc. 49).

2

commence on October 12, 2005. (Doc. 24).  Pursuant to the defendant's motion to continue the

trial of the case, United States District Judge Myron H. Thompson continue the trial until January

23, 2006.  (Doc. 50, Order to Continue).

On January 3, 2006, a one-count felony information was filed against Mary Wages Bobo

and her co-defendant Charles David Bobo.[2]  See Attachment B, the felony information.  The

information charged that, beginning on or about April 10, 2003, and continuing to on or about

May 1, 2003, in Covington County, Alabama, within the Middle District of Alabama, the

defendant, while aiding and abetting others known and unknown, in violation of this subchapter,

namely, 21, U.S.C.§ 841(f)(1), did knowingly distribute a listed chemical, to-wit:

pseudoephedrine, other than in violation of a record-keeping and reporting requirement of

Section 830 of Title 21, all in violation of 21 U. S.C. § 841(f)(1), and 18 U.S.C. § 2.  On January

4, 2006, Mary Bobo signed a waiver of indictment and agreed to enter a plea to the information

pursuant to a plea agreement.  See Attachment C, the waiver of indictment; Attachment D, the

plea agreement.

The plea agreement informed Mary Bobo that, in return for pleading guilty to distribution

of pseudoephedrine, in violation of 21 U. S.C. § 841(f)(1) and 18 U.S.C. § 2, she would receive a

statutory maximum sentence of not more than 5 years, and should the government file a motion

for downward departure based upon her substantial assistance, the defendant would received a

sentence not less than 3 years imprisonment.  Attachment D, at 2 and 3.  The agreement also

stated that the defendant would be able to withdraw her guilty plea if the Court rejected the terms

---

[2]    Each reference to "the defendant" in the government's response will hereinafter
mean Mary Wages Bobo.

3

of the plea agreement pursuant to Rule 11(c)(1)(C). Id. at 2 and 3.   The agreement also provided that, absent circumstances involving prosecutorial misconduct or ineffective assistance of counsel, Mary Bobo waived both her right to appeal her conviction or sentence, and her right to seek collateral relief. Id. at 4-5.   The agreement contained a factual basis for the plea wherein Mary Bobo acknowledged that between April 10, 2003, and May 1, 2003, while aiding and abetting other persons and doing business in Horn Hill Grocery store, she sold a total of 155 bottles of pseudoephedrine to a cooperating individual in Covington County, Alabama.   Mary Bobo acknowledged that on April 10, 2003, 6 bottles and 5 sets of blister packs stapled together were sold at Horn Hill Grocery.  She admitted that each blister pack contained six tablets and 6 blister packs stapled together equals one set or one bottle.  Further, that each tablet contains 60 milligrams of pseudoephedrine.  On April 24, 2003, Mary Bobo admitted that 300 blister packs were sold to the cooperating individual at Horn Hill Grocery.  And finally, she admitted that on May 1, 2003, 408 blister packs, and 26 bottles were sold to the cooperating individual at Horn Hill Grocery.  Each bottle contained 36 tablets, and each tablet contained 60 milligrams of pseudoephedrine.  Mary Bobo admitted that she knew or had reasonable cause to believe that the pseudoephedrine tablets were controlled chemicals that would be used to manufacture methamphetamine.  The parties stipulated that pseudoephedrine is a Schedule II. Controlled Substance.  Attachment D, at 5.

Mary Bobo's guilty plea hearing was conducted on January 4, 2006.  See Attachment E, a transcript of the guilty plea hearing.  At the outset of the hearing, United States Magistrate Judge Charles Coody asked questions of Mary Bobo to determine her competency to enter a guilty plea. Id. at 3-4.  The defendant told Judge Coody she was forty (40) years old, had two years of college

4

and the only medication she was taking was Synthroid (thyroid replacement therapy for under

active thyroid), and Effexor (an antidepressant).  In addition, the Court advised the defendant that

although she was being charged by way of an information, she had the constitutional right to be

charged with a felony offense only by an indictment.  Id. at 5.  After being told that a grand jury

may not indict her on the present charges, Mary Bobo waived her right to be charged with a

felony by indictment.  Id. at 5-6.   United States Magistrate Judge Charles S. Coody advised

Mary Bobo that if the court imposed "a sentence which was more severe or different from the

sentence that [she expected], [she would] have the right to withdraw [her] guilty plea."  Id.  at 11.

Mary Bobo acknowledged that she understood.  Id..   The Defendant was also informed that she

faced a maximum statutory sentence of five years.  Id. at 12.  The plea agreement limited the

minimum sentence that Mary Bobo could receive to 3 years.  Attachment D, at 2 and 3.  Mary

Bobo also affirmed before the Court that she was aware of the U.S. Sentencing Guidelines, and

had discussed the application of the Guidelines to her case with her attorney.  Attachment E, at

12.

        The Court then addressed the waiver provision of Mary Bobo's plea agreement.  The

Court asked Mary Bobo whether she understood that she was "giving up any right to appeal or

otherwise attack the sentence imposed on [her] with two exceptions...ineffective assistance of

counsel and prosecutorial misconduct."  Attachment E, at 8.  Mary Bobo responded affirmatively

to this question.  Id. at 13.

        Next, after ensuring that Mary Bobo understood the rights that she would be relinquishing

by pleading guilty (Attachment E, at 13-14), the Court reviewed the allegations in the one-count

information and explained those things that the United States would have to prove if a trial was

held in her case.  Id. at 14-15.  Mary Bobo's defense counsel, Tiffany McCord, asked Mary Bobo

questions contained in the factual basis of the plea agreement during the plea colloquy.  Id. at 15-

16.  Mary Bobo acknowledged the facts contained in the factual basis as previously described

above.  Id.; Attachment D, at 5.  Upon questioning by government counsel, Mary Bobo

acknowledged that she understood aiding and abetting to mean that she sold pseudoephedrine,

pseudoephedrine was sold by her husband or another employee with her knowledge.  Id. at 17.

Finally, the parties stipulated that each tablet contained 60 milligrams of pseudoephedrine and

pseudoephedrine was a Schedule II controlled substance.  Id.

After finding that Mary Bobo was fully competent and capable of entering an informed

plea, that she was aware of the nature of the charges and the consequences of the plea, that the

plea was knowing and voluntary, and supported by an independent factual basis containing each

of the essential elements of the offense, the Court accepted her plea of guilty.  Attachment E, at

17-18.

A presentence investigative report was ordered and was prepared by the United States

Probation Office in this case.  See Presentence Investigative Report ("PSR"), Under Seal.  The

report calculated a total offense level of 31 (PSR, at ¶ 22), and a criminal history category of I

(PSR at ¶ 25), resulting in a guidelines range of imprisonment from 108 to 135  months.  PSR at

¶ 37.  Because the statutory maximum sentence is less than the minimum guidelines range,

pursuant to U.S.S.G. § 5G1.1(a), the statutory maximum shall become the guidelines sentence.

PSR ¶ at 37.

A sentencing hearing was held on May 30, 2006.  See Attachment F, transcript of the

sentencing hearing.  The transcript reflects that Mary Bobo, through her defense counsel, stated

that there were no objections to the presentence report.  Attachment F, at 16.  The Court adopted

the factual statements contained in the presentence report, made specific findings that the

guidelines offense level was 31, and the criminal history category was I, and the advisory

guidelines range was 60 months, the criminal history category was roman numeral I, and the fine

range was $15,000 to $150,000. Id. at 16.  The Court, the government, and defense counsel

engaged in an exchange regarding mitigating and aggravating factors of sentencing and the fact

that no motion for a downward departure had been filed on behalf of Mary Bobo.  Id. at 16-22.

Mary Bobo and her husband, co-defendant, presented testimony on their behalf from family and

friends.  Id.   The court asked Mary Bobo whether she had anything "[she] would like to say in

mitigation or otherwise before [he] pronounced the sentence of law upon [her]." Id. at 19.  Mary

Bobo responded with her plea for leniency to the court.  Id.  at 19-20.  Based upon the testimony

from defense witnesses and Mary Bobo's plea to the Court for leniency, the Court advised

defense counsel for Mary Bobo that she had entered a guilty plea, and that [she] could  withdraw

[her] guilty plea and go to trial. Id. at 23.   Mary Bobo, through defense counsel, declined

withdrawing her guilty plea.  Id. at 23.  Concluding that a downward departure would not be filed

in this case, the Court proceeded with the sentencing.  Id. at 24.

    The Court then asked the government for a recommended sentence.  The government

recommended a sentence of five years.  Attachment F, at 21.  The Court considered the nature of

the offense, the seriousness of the offense and factors outlined in 18 U.S.C. § 3553 in

determining a reasonable sentence, and sentenced the defendant to five years imprisonment, three

year supervised release, a $100 assessment fee and waived imposition of a fine due to the

defendant's inability to pay the fine.  Id. 25-26.  The Court also advised Mary Bobo that she had

the right to appeal if she believed her sentence was in violation of the law.  The Court stated that

the defendant may have waived "some or all of [her] right to appeal as part of her plea

agreement."  Id. at 27-28.  Finally, the Court advised the defendant that to the extent she believes

her waiver is not enforceable, she had ten days in which to appeal and if she was unable to pay

the cost of an appeal, she could apply to appeal *in forma pauperis* and an attorney would be

appointed to represent her.  Id. at 28.

     At the conclusion of the sentencing, the Court asked the defendant "is there any

indication of drug addiction? Attachment F, at 8.  Mary Bobo responded, "No, Sir."  Id. at 28.

The sentencing hearing concluded.

## II.  CLAIMS RAISED IN THE § 2255 MOTION

     As far as the United States can discern, Mary Wages Bobo raises the following issues in

her § 2255 motion:

1.     Ineffective assistance of counsel for failure to file an appeal.

2.     Defendant's competency to enter a guilty plea.

## III.  RESPONSE TO CLAIMS FOR RELIEF

**A.**    **Mary Bobo's Petition Is Barred Because She Waived Her Right To Seek Relief
       Under 28 U.S.C. § 2255 When She Entered Her Guilty Plea.**

     Mary Bobo agreed to waive her right to appeal and collaterally attack her sentence in any

post-conviction proceeding during her guilty plea hearing on January 4, 2006.  See Attachment

D, at 10-11; Attachment E at 13.  The Court specifically questioned Mary Bobo as to whether she

understood that her plea agreement waived her ability to appeal and collaterally attack her

sentence, and she stated under oath that she understood this provision.  Id.  Mary Bobo also

acknowledged that before signing the plea agreement, she had an opportunity to read it and to discuss the terms of the agreement with her attorney, Tiffany McCord. Attachment E at 10. In addition, the sentencing judge advised Mary Bobo that she had the right to appeal the sentence imposed within ten days if she believed the sentence was in violation of law. Attachment F, at 27-28. Notwithstanding the right to appeal, the sentencing judge explained to Mary Bobo that she had waived her rights and "waivers are generally found to be enforceable." Id. After explaining the affect of a waiver in the plea agreement, the Court asked Mary Bobo if she had any questions. Mary Bobo responded, "No, Sir." Id. at 28.

To the extent that Mary Bobo is attempting to attack her sentence, the Eleventh Circuit views Mary Bobo's waiver of right to seek relief under § 2255 as a contract between the United States and a criminal defendant.

> [A]mong the considerations that a defendant may offer as part of such a contract is waiver of his right to appeal, provided that the waiver is made knowingly and voluntarily. See United States v. Bushert, 997 F.2d 1342, 1350 (11th Cir. 1993). In this case, [the appellant's] waiver was clearly knowing and voluntary–he was specifically questioned by the district court regarding the waiver of his right to appeal. See United States v. Buchanan, 131 F.3d 1005, 1008 (11th Cir. 1997). The plea agreement is therefore enforceable and would appear to bar this challenge.

United States v. Howle, 166 F.3d 1166, 1168 (11th Cir. 1999).

Moreover, "[a] defendant's waiver of the right to appeal 'directly or collaterally' encompasses his right to challenge his sentence in a section 2255 proceeding." Velazques v. United States, 2006 WL 3694641 (M.D.Fla,), See Williams v. United States, 396 F.3d 1340, 1342 (11th Cir. 2005), (although the Eleventh Circuit has not addressed whether a sentence-appeal waiver includes the waiver of the right to challenge the sentence collaterally in the context

of a § 2255 petition asserting ineffective assistance of counsel, every Circuit to have addressed the issue has held that a valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing.).

The Eleventh Circuit has also stated that "a waiver of the right to seek federal habeas review must be 'an intentional relinquishment or abandonment of a known right,' the right to federal habeas review." Allen v. Thomas, 161 F.3d 667, 670 (11th Cir. 1998).  The record demonstrates that the Court ascertained that Mary Bobo's assent to the terms of her plea agreement was knowing and voluntary.  Attachment E, at 18.   Mary Bobo's § 2255 motion is procedurally barred from review by this Court.

**B.      Mary Bobo Has Met the One-Year Statue of Limitation Deadline For The Filing of Claims Under 28 U.S.C. § 2255.**

In the event this Court finds that Mary Bobo's waiver of her right to seek relief under 28 U.S.C. § 2255 is unenforceable, the United States notes that she has filed her motion in a timely manner under paragraph six of 28 U.S.C. § 2255, which provides a one-year period of time within which to file a motion under the rule.  The applicable provision in this case requires that a movant file her § 2255 motion within one year from the "date on which the judgement of conviction became final."

Mary Bobo was sentenced on May 30, 2006.  Mary Bobo did not appeal her sentence to the Eleventh Circuit Court of Appeals.  Her sentence became final when the time for filing an appeal to the Eleventh Circuit expired.  Although not specifically addressing the application of the statute of limitations to the 10-day notice of appeal requirement, the Eleventh Circuit has held

10

that a judgment of conviction becomes final for someone who appeals to an appellate court when the time for seeking certiorari review in the Supreme Court expires. <u>See</u> <u>Kaufman v. United States</u>, 282 F.3d 1336, 1337-39 (11th Cir. 2002). Likewise, a judgment of conviction becomes final for someone who does not appeal when the time for seeking the appeal expires. Mary Bobo had ten days from the May 30, 2006, entry of judgment by this Court to seek review by the Eleventh Circuit; her judgment of sentence, therefore, became final on June 9, 2006. Therefore, under § 2255, Mary Bobo had until June 11, 2007, the first business day after one year from June 9, 2006, to file her § 2255 motion. She filed her motion on June 1, 2007. It is, therefore, timely.

**C.** **<u>Counsel was not ineffective for failing to file an appeal if Mary Bobo did not request that she do so.</u>**

Mary Bobo's ineffective assistance of counsel claim asserts that counsel did not appeal her sentence. However, she does not claim that she actually requested an appeal, nor does she submit any additional facts or documentation which support this claim. Mary Bobo only states that her defense counsel, Tiffany McCord, told her that she had "signed a plea agreement in which [she] waived all rights to an appeal." <u>See</u> Doc. 10, at 4. The record is clear not only was the defendant given an opportunity to withdraw her guilty plea, the sentencing Court advised the defendant that she could appeal her sentence if she believed any part of the waiver unenforceable. Attachment F, at 27-28. Moreover, the Court advised Mary Bobo that an attorney would be appointed to represent her if she could not hire an attorney. <u>Id.</u>

Defense counsel filed an affidavit stating that Mary Bobo never made a request that she file an appeal. Notwithstanding, where counsel fails to file a notice of appeal after having been so instructed by his client, a showing of prejudice is not required, as the United States Supreme

Court has long recognized that such action is both professionally unreasonable and presumptive prejudicial. See Roe v. Flores-Ortega, 528 U.S. 470, 477, 484-85 (2000). The Eleventh Circuit, however, has consistently held that, in these circumstances, defendants need not show viable grounds for the requested appeal. See Gomez-Diaz v. United States, 433 F.3d 788 (11th Cir. 2005); McIver v. United States, 307 F.3d 1327, 1330 at n.1 (11th Cir. 2002); Martin v. United States, 81 F.3d 1083 (11th Cir. 1996); Montemoino v. United States, 68 F.3d 416, 417 (11th Cir. 1995).

Crucial to a Court's ruling that an appeal be permitted in circumstances such as those alleged by Mary Bobo is a finding that the defendant did, in fact, instruct her attorney to file a notice of appeal. In the McIver and Martin cases, the fact of counsel's failure to file the requested notice of appeal was established in the record. See McIver, 307 F.3d at 1329; Martin, 81 F.3d at 1084. In Montemoino, the Eleventh Circuit remanded the case for a hearing to determine whether the facts supported the defendant's allegation that he actually requested an appeal, and conditioned relief on a finding that the request was made. Montemoino, 68 F.3d at 418. See also United States v. Snitz, 342 F.3d 1154, 1156 (10th Cir. 2003)(where the district court acknowledged the defendant's "credible testimony that immediately following his sentencing, he told his attorneys he wanted to appeal his sentence.")

The Eleventh Circuit's decision in Gomez-Diaz v. United States is consistent with past cases on the issue raised in Mary Bobo's motion. That case presented a petitioner who, the district court determined, "explicitly asked his attorney to appeal," but was persuaded not to by the attorney. Gomez-Diaz, 433 F.3d at 791. The Eleventh Circuit remanded with instructions for the district court to determine

12

(1) whether Petitioner's initial statement of his desire to appeal was sufficient to trigger the per se duty to appeal outlined in <u>Flores-Ortega</u>; and (2) if not, whether Petitioner's attorney fulfilled his constitutional duty to consult with his client and to make a reasonable effort to determine Petitioner's wishes, and whether he acted in accordance with those wishes.

<u>Id</u>. at 792-93.

In effect, the Eleventh Circuit requires a petitioner to establish that she actually instructed her counsel to file an appeal.  The United States submits that Mary Bobo's  agreement to a sentence within the statutory maximum of 60 months pursuant to a plea to an information in lieu of a guideline sentence of up to 135 months (if convicted under the pending indictment), renders her request for an appeal unlikely.  <u>See</u> PSR at ¶ 37.  This position is consistent with defense counsel Tiffany McCord's affidavit, who averred to this Court that Mary Bobo did not request an appeal.  (Doc. # 9, at 2.)  Further, the Court directly asked Mary Bobo whether she had objections to her sentence, and she remained silent while her counsel responded that she did not.  Exhibit F, at 27.  Finally, after explaining the right of appeal, the Court asked Mary Bobo did she have any questions, to which she responded, "No, sir."  <u>Id.</u> At 28.   This portion of the record mitigates against Mary Bobo's claim that she wished to appeal her sentence.  In the event this Court finds that Mary Bobo has presented sufficient facts to support a finding that she did request an appeal, she is entitled to an out-of-time appeal.  <u>Gomez-Diaz</u>, <u>id</u>. at 794.

**D.** **<u>Mary Bobo was competent to understand the nature of the guilty plea and proceedings against her.</u>**

Mary Bobo asserts that she was depressed and did not understand the nature of her guilty plea and the proceedings against her.  United States Magistrate Judge Charles Coody asked specific questions regarding Mrs. Bobo's competency to proceed with the guilty plea.  First,

13

Mary Bobo advised the court that she was forty years of age and had gone to college for two years. Attachment E, at 4. Although Mary Bobo now states in her petition that she was on medication, had suicidal tendencies and was stressed during the proceedings, she was not forthcoming to the Court. Mary Bobo advised the court that she had not "recently been hospitalized or treated by a physician or a psychiatrist for any reason." Id. When asked about medication, Mary Bobo stated that she was taking Synthroid and Effexor. Id. Defense counsel, Tiffany McCord, stated that she had no doubt whatsoever that her client was competent to enter a guilty plea. Doc. 9, at 3-4. Moreover, Tiffany McCord states that she spoke to family members and friends of Mary Bobo, and no one indicated any concern about Mary Bobo's mental status. If Mary Bobo was in fact suffering from a mental illness that would render her incompetent to enter a guilty plea, her condition did not manifest itself to her defense counsel, the government, or the Court. Therefore, the defendant was less than honest to the court if the defendant had any questions or was reluctant about entering a guilty plea.

## IV.    A LIMITED HEARING IS APPROPRIATE IN THIS MATTER

With the exception of Mary Bobo's claim that counsel was ineffective due to her failure to file an appeal, she has not pleaded facts or presented sufficient evidence or argument which, if true, show that she is entitled to an evidentiary hearing, and her claims for relief on her competency to enter a guilty plea should be denied without an evidentiary hearing. See Blacklidge v. Allison, 431 U.S. 63, 73-74 (1977); Tejada v. Dugger, 941 U.S. 1551, 1559 (11th Cir. 1991); United States v. Laetividal-Gonzalez, 939 F. 2d 1455, 1465 (11th Cir. 1991). However, the United States believes that a limited hearing should be conducted on the issue of whether counsel was ineffective for failing to file an appeal in this case. Should this Court

determine that Mary Bobo has made any arguments not addressed in this response, the United States would request the opportunity to further respond to those arguments.

### V. CONCLUSION

For the above reasons, Defendant/Movant Mary Wages Bobo has failed to demonstrate that she is entitled to any relief from this Court, and her § 2255 motion should be denied without an evidentiary hearing.

Respectfully submitted on this the 6th day of August, 2007.

LEURA G. CANARY
UNITED STATES ATTORNEY


/s/Tommie Brown Hardwick
TOMMIE BROWN HARDWICK
One Court Square, Suite 201
Montgomery, AL 36104
Phone:  (334) 223-7280
Fax:  (334) 223-7135
E-mail:  tommie.hardwick@usdoj.gov
ASB4152 W86T

# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| MARY WAGES BOBO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 2:07cv482-MHT |
| | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Tiffany Bullard McCord, Esq.; and I hereby certify that I have mailed by United States Postal Service the documents to the following non-CM/ECF participant: Mary Wages Bobo, REG #11731-002, Marianna FPC, Seminole A, P.O. Box 7006, Marianna, FL, 42446-7006.

Respectfully submitted,

/s/Tommie Brown Hardwick
TOMMIE BROWN HARDWICK
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334)223-7280
Fax: (334)223-7135
E-mail: tommie.hardwick@usdoj.gov
ASB4152 W86T

16

GOVERNMENT
EXHIBIT

A

FILED

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JUN 2 9 2005

CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

UNITED STATES OF AMERICA          )
                                  )
                                  ) CR. NO. 2:05cr151-T
        v.                        )
                                  )     [21 USC 846;
                                  )     21 USC 841(a)(1);
CHARLES DAVID BOBO and            )     21 USC 841(c)(2);
MARY WAGES BOBO, d/b/a            )     18 USC 2]
HORN HILL GROCERY, and            )
JESSICA SINGLETON                 )
                                  ) INDICTMENT

The Grand Jury charges:

## COUNT 1

Beginning on or about April, 2000, and continuing to on or about May 1, 2003, the exact

dates being unknown to the Grand Jury, in Covington County, Alabama, within the Middle District

of Alabama and elsewhere,

                    CHARLES DAVID BOBO and
                    MARY WAGES BOBO, d/b/a
                    HORN HILL GROCERY, and
                    JESSICA SINGLETON,

defendants herein, did knowingly and willfully combine, conspire, confederate and agree together

with other persons known and unknown to manufacture five grams or more of methamphetamine,

a Schedule II controlled substance.  All in violation of Title 21, United States Code, Sections

841(a)(1) and 846.

## COUNT 2

On or about April 10, 2003, in Covington County, Alabama, within the Middle District of

Alabama,

                    MARY WAGES BOBO, d/b/a
                    HORN HILL GROCERY,

defendants herein, while aiding and abetting each other and others known and unknown to the Grand

Jury, did knowingly and intentionally possess and distribute pseudoephedrine, a Schedule I listed

chemical, knowing and having reasonable cause to believe that listed chemical would be used to

manufacture a controlled substance, in violation of Title 21, United States Code, Section 841(c)(2),

and Title 18, United States Code, Section 2.

## COUNT 3

On or about April 24, 2003, in Covington County, Alabama, within the Middle District of

Alabama,

CHARLES DAVID BOBO and
MARY WAGES BOBO, d/b/a
HORN HILL GROCERY, and
JESSICA SINGLETON,

defendants herein, while aiding and abetting each other and others known and unknown to the Grand

Jury, did knowingly and intentionally possess and distribute pseudoephedrine, a Schedule I listed

chemical, knowing and having reasonable cause to believe that the listed chemical would be used

to manufacture a controlled substance, in violation of Title 21, United States Code, Section

841(c)(2), and Title 18, United States Code, Section 2.

## COUNT 4

On or about May 1, 2003, in Covington County, Alabama, within the Middle District of

Alabama,

CHARLES DAVID BOBO, d/b/a
HORN HILL GROCERY,

defendant herein, while aiding and abetting each other and others known and unknown to the Grand

Jury, did knowingly and intentionally possess and distribute pseudoephedrine, a Schedule I listed

chemical, knowing and having reasonable cause to believe that the listed chemical would be used

to manufacture a controlled substance, in violation of Title 21, United States Code, Section 841(d)(2), and Title 18, United States Code, Section 2.
(c)*

<u>Forfeiture Allegation</u>

A.     Counts 1 through 4 of this indictment are hereby repeated and incorporated herein by reference.

B.     Upon conviction for violation of Title 21, United States Code, Sections 841 and 846, as alleged in Count 1 and/or Title 21, United States Code, Section 841, and Title 18, United States Code, Section 2, as alleged in Counts 2 through 4 of this indictment, the defendants,

CHARLES DAVID BOBO and
MARY WAGES BOBO d/b/a
HORN HILL GROCERY, and
JESSICA SINGLETON,

shall forfeit to the United States pursuant to Title 21, United States Code, Section 853, any and all property constituting or derived from any proceeds the said defendants obtained directly or indirectly as a result of the said violation and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the violation alleged in Counts 1 through 4 of this indictment, including but not limited to the following:

All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, known as Horn Hill Grocery, located in Opp, Alabama, being more particularly described as follows:

The NW1/4 of the SE1/4 of Section 1, Township 3, Range 17; and also a parcel of land containing about 5 acres, more or less, in the Southeast corner of the SW1/4 of the NE1/4 of Section 1, Township 3, Range 17, described as follows: "Beginning in the Southeast corner of the said SW1/4 of the NE1/4 and running West along the Forty line 400 yards to the Opp-Florala public road; thence in a Northeasterly direction along said public road to the starting point; and also a parcel of land described as follows: "Beginning at the Northwest corner of the NE1/4 of the SE1/4 of Section 1, Township 3, Range 17, and running due South

3

85 yards down Forty line; thence East 35 yards; thence South 140 yards; thence West 35 yards to the Forty line; thence North along Forty line 140 yards to the starting point; "Less and except 3 acres, more or less, in the Northwest corner of the NW1/4 of the SE1/4 of Section 1, Township 3, Range 17; containing in the aggregate 43 acres more or less. Less a 20' R/W along existing road along East side of NW1/4 of SE1/4.

C.    If any of the forfeitable property described in this forfeiture allegation, as a result of any act or omission of the defendants

(1)  cannot be located upon the exercise of due diligence;

(2)  has been transferred or sold to, or deposited with, a third person;

(3)  has been placed beyond the jurisdiction of the Court;

(4)  has been substantially diminished in value; or,

(5)  has been commingled with other property which cannot be subdivided without difficulty; the United States, pursuant to Title 21, United States Code, Section 853, intends to seek an order of this Court forfeiting any other property of said defendants up to the value of the forfeitable property, all in violation of Title 21, United States Code, Sections 841, 846, and 853 and Title 18, United States Code, Section 2.

A TRUE BILL:

_____
Foreperson

_____
LEURA GARRETT CANARY
UNITED STATES ATTORNEY

_____
TOMMIE BROWN HARDWICK
Assistant United States Attorney

_____
JOHN T. HARMON
Assistant United States Attorney

4



IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

2006 JAN -3 P 3: 27

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| | ) CR. NO. 02-05cr151-T |
| v. | ) [21 USC 841(f)(1); |
| | ) 18 USC 2] |
| CHARLES DAVID BOBO, and | ) |
| MARY WAGES BOBO, d/b/a | ) |
| HORN HILL GROCERY | ) |
| | ) INFORMATION |

Beginning on or about April 10, 2003, and continuing to on or about May 1, 2003, Covington

County, Alabama, within the Middle District of Alabama,

CHARLES DAVID BOBO, and
MARY WAGES BOBO, d/b/a
HORN HILL GROCERY,

defendants herein, while aiding and abetting others known and unknown, in violation of this

subchapter, namely, Title 21, United States Code, Section 841(c)(2), did knowingly distribute a listed

chemical, to-wit: pseudoephedrine, other than in violation of a record-keeping and reporting

requirement of Section 830 of Title 21, all in violation of Title 21, United States Code, Section

841(f)(1), and Title 18, United States Code, Section 2.


LEURA GARRETT CANARY
UNITED STATES ATTORNEY

Tommie Brown Hardwick
Assistant United States Attorney

GOVERNMENT
EXHIBIT
C

FILED

# *United States District Court*

JAN - 4 2006

_____ MIDDLE _____ DISTRICT OF _____ ALABAMA _____

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

UNITED STATES OF AMERICA

v.

## WAIVER OF INDICTMENT

MARY WAGES BOBO, d/b/a
HORN HILL GROCERY

2:05 CR 151-T

CASE NUMBER: ~~02-05-CR-0051-T~~

I, _____ MARY WAGES BOBO, d/b/a HORN HILL GROCERY _____, the above named

defendant, who is accused of

VIOLATIONS OF TITLE 21 USC § 841(f)(1) and TITLE 18 USC § 2,

being advised of the nature of the charge(s), the proposed information, and of my rights, hereby

waive in open court on ___ 1/4/06 ___ prosecution by indictment and consent that the

                              *Date*

proceeding may be by information rather than by indictment.

_____ Mary Wages Bobo _____
*Defendant*

_____ _____
*Counsel for Defendant*

Before _____ _____
    *Judicial Officer*

GOVERNMENT
EXHIBIT
D

FILED

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JAN - 4 2006

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CR. NO.   02:05cr00151-T |
| v. | ) | |
| | ) | |
| MARY WAGES BOBO, d/b/a | ) | |
| HORN HILL GROCERY | ) | |

## PLEA AGREEMENT

DEFENSE COUNSEL:                    TIFFANY B. MCCORD

ASSISTANT U.S. ATTORNEY:        TOMMIE BROWN HARDWICK

**COUNT AND STATUTE CHARGED**:
Count 1       21 U.S.C. § 841(f)(1), Wrongful Distribution or Possession of listed Chemical
              and 18 U.S.C. § 2, Aiding and Abetting

**COUNT PLEADING PURSUANT TO PLEA AGREEMENT**:
Count 1       21 U.S.C. § 841(f)(1), Wrongful Distribution or Possession of listed Chemical
              and 18 U.S.C. § 2, Aiding and Abetting

**PENALTIES BY COUNT - MAXIMUM PENALTY**:
Count 1
NMT $250,000 Fine, or;
NMT  5 Years;
NMT  3Y Sup Rel;
$100  Assessment Fee;
VWPA

**ELEMENTS OF THE OFFENSE:**
Count 1       21 U.S.C. § 841(f)(1), Wrongful Distribution or Possession of listed Chemical, and
              18 U.S.C. § 2, Aiding and Abetting

First:        While aiding and abetting another person, the defendant distributed a listed chemical
              in violation of 21 U.S.C. § 841;

Second:       That the defendant did so knowingly.

**************************************************************

Tommie Brown Hardwick, Assistant United States Attorney, and Tiffany B. McCord, attorney for the defendant, pursuant to the provisions of Rule 11(c)(1)(C), *Federal Rules of Criminal Procedure*, as Amended, have, with the authorization of the undersigned , heretofore entered into discussions with a view toward reaching a pretrial conclusion of the charges pending in the Information herein and a Plea Agreement has been reached by said parties in the following respects:

## GOVERNMENT'S PROVISIONS

1. Upon entering a plea of guilty by the defendant to the offenses charged in Count 1 of the Information, the attorney for the Government will do the following:

a. The government agrees to dismiss the Indictment pending in this case.

b. The government agrees that the defendant will be sentenced to not more than 5 year statutory maximum under 18 U.S.C. § 841(f)(1) after the United States Sentencing Guidelines ("guidelines") have been calculated by the United States Probation Officer and approved by the Court, and not less than 3 years based upon any Government's motion for downward departure under U.S.S.G. § 5K1.1 based upon substantial assistance to the United States.

c. The Government agrees that should the defendant provide substantial assistance to the government and law enforcement, the government will file a motion for downward departure under the provisions of U.S.S.G. § 5K1.1 and Rule 35, Federal Rules of Criminal Procedure, based upon the defendant's substantial assistance to the United States in other cases, and for providing source information in the instant cases. The defendant understands that the downward departure motion(s) will not reduce her sentence below 3 years as agreed upon in this plea agreement in paragraph "b" above.

2

d. The government agrees that the defendant should receive a two level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a). In addition, the government will file a motion for a one level reduction under U.S.S.G. § 3E1.1(b). However, the defendant will not receive any acceptance of responsibility if the defendant commits another federal, state or local offense after the dates of the present offense; violates any of the conditions outlined in the Commentary to §3E1.1, or in any way violates her term of release or supervision, if applicable.

e. The government agrees that there are no other motions for downward departure applicable in this case. If the defendant files a motion for downward departure, or should the Court in its discretion using the United States Sentencing Guidelines as advisory, sentence the defendant below 3 years, this plea agreement will become void.

2. The United States reserves the right to inform the Court and the Probation Department of all facts pertinent to the sentencing process, including all relevant conduct concerning the offense and the defendant's background.

## DEFENDANT'S PROVISIONS

3.    The defendant agrees to the following:

a. To plead guilty to Count 1 of the Information.

b. The defendant agrees that there are no other motions for downward departure applicable in this case except as specified above in paragraph 1.c., under Government Provisions. If the defendant files a motion for downward departure, or should the Court in its discretion using the United States Sentencing Guidelines as advisory, sentence the defendant below 3 years, this plea agreement will become void. However, the defendant may withdraw the plea if the court rejects the terms of the plea agreement pursuant to Rule 11(c)(1)(C).

3

c.  It is understood that by signing this agreement, you agree to provide substantial assistance to law enforcement agents.  "Substantial assistance" with law enforcement agents under this agreement is understood to include, but is not limited to, the following:

(1)    Debriefing by the Federal and State Law Enforcement officers.

(2)    Making consensually monitored telephone calls to, or otherwise contacting, persons known to be involved in violations of the law.

(3)    Introducing undercover law enforcement officers to persons you know to be involved in illegal activity.

(4)    Maintaining contact with the law enforcement agents with whom you are working.  You shall work under the direct supervision of law enforcement agents.  At no time are you authorized to take any actions without first obtaining the direct authorization of such agents.  Any independent and unauthorized actions will be deemed a violation of this agreement.

(5)    Testifying truthfully against any such persons before any and all grand juries and at any and all hearings and trials.

(6)    You agree to make a good faith effort to assist law enforcement agencies in arranging and making undercover contacts with other persons you know to be involved in illegal activity.

(7)    You will cooperate fully and truthfully with the government in this investigation and in any other federal criminal investigation.  You will respond, completely, fully and truthfully to all inquiries addressed to you by representatives of the government, and you will testify fully and truthfully at any and all reasonable times and places before grand juries and against any and all defendants at the trial of any and all cases arising from this investigation or any other such investigation.

d.  **DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK**

Understanding that 18 U.S.C. § 3742 provides for appeal by a defendant of the sentence under certain circumstances, defendant expressly waives any and all rights conferred by 18 U.S.C. § 3742 to appeal the sentence on any other ground and waives the right to attack the sentence in any

post-conviction proceeding. Except, the defendant does not waive the right to appeal or post-conviction relief with respect to ineffective assistance of counsel and prosecutorial misconduct.

Further, the parties agree that nothing in this agreement shall affect the United States' right and/or duty to appeal as set forth in 18 U.S.C. § 3742(b). However, if the United States appeals on any basis defendant's sentence pursuant to 18 U.S.C. § 3742(b), defendant is released from this waiver.

## FACTUAL BASIS

4. The defendant understands the nature of the charge to which the plea is offered involves proof as to the following: With respect to Count 1: Between April 10, 2003 and May 1, 2003, the defendant, while aiding and abetting other persons and doing business in Horn Hill Grocery store, sold a total of 155 bottles of pseudoephedrine to a cooperating individual in Covington County, Alabama. On April 10, 2003, 6 bottles and 5 sets of blister packs stapled together were sold at Horn Hill Grocery. Each blister pack contains six tablets and 6 blister packs stapled together equals one set or one bottle. Each tablet contains 60 milligrams of pseudoephedrine. On April 24, 2003, 300 blister packs were sold to the cooperating individual at Horn Hill Grocery. On May 1, 2003, 408 blister packs, and 26 bottles were sold to the cooperating individual at Horn Hill Grocery. Each bottle contained 36 tablets, and each tablet contained 60 milligrams of pseudoephedrine. The defendant knew or had reason to believe that the pseudoephedrine tablets were controlled chemicals that would be used to manufacture methamphetamine. The parties stipulate that pseudoephedrine is a Schedule II, Controlled Substance.

## DEFENDANT'S UNDERSTANDING AND ACKNOWLEDGMENT

5. The defendant agrees to enter a guilty plea to Count 1 of the Information.

5

6. The defendant, before entering a plea of guilty to Count 1 of the Information, as provided for herein by said Plea Agreement, advises the Court that:

a. The discussions between the attorney for the Government and the attorney for the defendant toward reaching an agreed plea in this case have taken place with the defendant's authorization and consent.

b. The defendant further understands that pursuant to Title 18, United States Code, Section 3013, said $100 assessment is to be paid by the defendant on the date of sentencing and that if a fine is imposed by the Court at sentencing, the defendant shall meet with a member of the Financial Litigation Section of the United States Attorney's Office on the day of sentencing and complete a written personal financial statement setting forth the defendant's assets and liabilities as of the date of the offense. The defendant will make an honest, good faith effort to pay the said fine as directed by the Financial Litigation Section of the United States Attorney's Office. The defendant further understands that by completing the financial statement, the defendant is representing that it is true and accurate to the best of the defendant's ability, knowledge, and belief.

c. The defendant understands that the defendant has a right to be represented by an attorney at every stage of the proceedings against the defendant herein and is represented by the defendant's undersigned attorney.

d. The defendant understands that the defendant has the right to plead not guilty and has the right to be tried by a jury and, at a trial thereof, has the right to the assistance of counsel, the right to confront and cross-examine witnesses against the defendant, the right to call witnesses in the defendant's own behalf, and the right not to be compelled to incriminate the defendant, and that if the defendant enters a plea of guilty herein, there will not be a further trial of any kind and that by

6

the entry of such a plea, the defendant waives the right to a trial by jury or to a trial before the Court.

e. The defendant further understands that in entering a plea of guilty herein, the Court may ask questions about the offense to which the plea is entered and further understands that if the defendant answers these questions under oath, on the record, and in the presence of counsel, which questions and answers would be recorded, that the answers may later be used against the defendant in a prosecution for perjury or false statement if the answers are not truthful.

f. The defendant further understands and advises the Court that the plea agreement as set forth herein and the plea to be entered by the defendant as a result thereof is voluntary on the defendant's part and is not the result of any force or threats or of any promises apart from the aforesaid Plea Agreement. The defendant further advises the Court that the Plea Agreement set forth herein is the result of prior discussions between the attorney for the Government and the attorney for the defendant, all conducted with the defendant's authorization, knowledge and consent.

g. The defendant further advises the Court that the defendant's understanding of this Plea Agreement is as set forth in this document.

h. The defendant further advises the Court that the defendant understands that after the entry of the guilty plea, the defendant may withdraw the plea if the Court rejects the plea agreement, pursuant to Rule 11(c)(1)(C). However, if the defendant withdraws the guilty plea, the government will prosecute the defendant on all charges alleged in the Information.

i. The defendant further advises the Court that the defendant understands and has been advised that evidence of a plea of guilty, later withdrawn or an offer to plead guilty to the crime charged in the Information herein, or of statements made in connection with and relevant to said plea or offer to plead, shall not be admissible in any civil or criminal proceedings against the defendant.

7

However, the defendant does understand that evidence of a statement made in connection with and relevant to a plea of guilty, later withdrawn, or an offer to plead guilty to the crimes charged in the Information herein, is admissible in a criminal proceeding for perjury or false statement when the statement was made by the defendant under oath, on the court record, and in the presence of counsel.

j. The Defendant is satisfied that defense counsel has been competent and effective in representing the defendant.

7. The undersigned attorneys for the Government and for the defendant represent to the Court that the foregoing Plea Agreement is the agreement of the parties that has been reached pursuant to the Plea Agreement procedure provided for in Rule 11(c)(1)(C), *Federal Rules of Criminal Procedure*, as amended. The attorney for the defendant further advises the Court that the defendant has been advised of the nature of the charge to which the foregoing described plea is to be offered, and that the defendant has been advised of the defendant's right to plead not guilty and to be tried by a jury on all issues herein; of the maximum possible penalty provided by law; that by the entering of a plea of guilty as aforesaid, the defendant waives the right to be tried by a jury or by the Court, waives the right to confront and cross-examine witnesses against the defendant and the right not to be compelled to incriminate the defendant; and that if the defendant pleads guilty, there will not be a further trial of any kind. Further, the defendant has been advised that if the defendant pleads guilty, the Court may ask questions about the offense to which the defendant has pleaded and that if the plea is rejected or later withdrawn, that the answers to such questions may not be used against the defendant in a civil or criminal proceeding, but that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement if the answers are not truthful.

8

8.  The defendant understands that the U.S. Probation Office will prepare a presentence

investigation report for the Court.  Although the Court must consider the Guidelines as contained

in the presentence report, the Guidelines are no longer mandatory and binding on the sentencing

court but are now advisory.  Notwithstanding, the Probation Officer will consider defendant's

conduct related to the offense to which the plea is offered, as well as the defendant's criminal history.

Considering the advisory nature of the Guidelines, the offense level or criminal history category, as

calculated by the Probation Officer, may differ from that projected by defendant's counsel or the

U.S. Attorney.  In the event that the Court, relying on the Guidelines as advisory, decides to sentence

the defendant within the statutory minimum and maximum, after considering 18 U.S.C. § 3553(a)

and the Guidelines, and higher than the defendant anticipated, the defendant will have the right to

withdraw the plea.

This 4th day of January, 2006.

Respectfully submitted,

LEURA GARRETT CANARY
UNITED STATES ATTORNEY

Andrew O. Schiff
Deputy Chief, Criminal Section
Post Office Box 197
Montgomery, Alabama 36101
(334)223-7280

Tommie Brown Hardwick, ASB4152 W86T
Assistant United States Attorney

9

I HAVE READ THE FOREGOING PLEA AGREEMENT, UNDERSTAND THE SAME, AND THE MATTER AND FACTS SET FORTH THEREIN ACCURATELY AND CORRECTLY STATE THE REPRESENTATIONS THAT HAVE BEEN MADE TO ME AND ACCURATELY SET FORTH THE CONDITIONS OF THE PLEA AGREEMENT THAT HAS BEEN REACHED.

IN ADDITION TO THE FOREGOING PROVISIONS TO WHICH I AGREE, I SWEAR UNDER PENALTY OF PERJURY THAT THE FACTS IN THE "FACTUAL BASIS" PARAGRAPH ABOVE ARE TRUE AND CORRECT AND THAT I AM SATISFIED THAT I HAVE RECEIVED COMPETENT ADVICE AND REPRESENTATION FROM MY DEFENSE COUNSEL, TIFFANY B. MCCORD.

MARY WAGES BOBO
Defendant

1/4/06
Date

TIFFANY B. MCCORD
Attorney for the Defendant

10

GOVERNMENT
EXHIBIT

E

1              IN THE UNITED STATES DISTRICT COURT

2              FOR THE MIDDLE DISTRICT OF ALABAMA

3                       NORTHERN DIVISION

4

5    UNITED STATES OF AMERICA

6        vs.                    CR NO:   05cr-151-LSC

7    CHARLES DAVID BOBO
     and MARY WAGES BOBO
8

9

10

11

12              *  *  *  *  *  *  *  *  *  *  *

13                  CHANGE OF PLEA HEARING

14              *  *  *  *  *  *  *  *  *  *  *

15           Before the Honorable Charles S. Coody,

16              United States Magistrate Judge, at

17           Montgomery, Alabama, on January 4, 2006

18              *  *  *  *  *  *  *  *  *  *  *

19   APPEARANCES:

20   FOR THE GOVERNMENT:      Tommie Brown Hardwick
                              Assistant United States Attorney
21
     FOR DEFENDANT           Marion D. Chartoff,
22   CHARLES BOBO:           Attorney at Law

23   FOR DEFENDANT           Tiffany Bullard McCord,
     MARY BOBO:              Attorney at Law
24

25

**2**

1   (The above case coming on for hearing at
2   Montgomery, Alabama, on January 4, 2006, before the
3   Honorable Charles S. Coody, United States Magistrate
4   Judge, the following proceedings were had commencing at
5   10:00 a.m.:)
6   THE COURT: Good morning.
7   MS. CHARTOFF: Good morning.
8   MS. HARDWICK: Good morning.
9   THE COURT: We're here in the United States
10   versus Mary Bobo and Charles Bobo, 2005-151, for the
11   purpose of the Defendants entering changes of pleas. As I
12   have reviewed the proposed plea agreements, both
13   Defendants, as I understand it, will be pleading to a
14   felony information.
15   MS. HARDWICK: That's correct, Your Honor.
16   THE COURT: Is that correct? Ms. Chartoff, for
17   that purpose both of them must waive their right to an
18   indictment and there's a colloquy I need to take them
19   through. Would there be any objection to doing that
20   collectively with respect to the two Defendants?
21   MS. CHARTOFF: No, Your Honor.
22   MS. MCCORD: No, Your Honor.
23   THE COURT: Very good. Mr. and Mrs. Bobo, if you
24   will please stand and raise your right hand and be sworn.
25   THE CLERK: Do you and each of you solemnly swear

**3**

1   or affirm that the testimony you give in this cause to be
2   the truth, the whole truth, and nothing but the truth, so
3   help you God?
4   DEFENDANT MARY BOBO: I do.
5   DEFENDANT CHARLES BOBO: I do.
6   THE COURT: Mr. Bobo, what is your full name?
7   DEFENDANT CHARLES BOBO: Charles David Bobo.
8   THE COURT: And how old are you?
9   DEFENDANT CHARLES BOBO: 39 years old.
10   THE COURT: And how far have you gone in school?
11   DEFENDANT CHARLES BOBO: I graduated high school,
12   sir.
13   THE COURT: Are you currently or recently under
14   the care of a physician or a psychiatrist?
15   DEFENDANT CHARLES BOBO: No, sir.
16   THE COURT: Have you recently been hospitalized
17   or treated for any narcotics addiction?
18   DEFENDANT CHARLES BOBO: No, sir.
19   THE COURT: Are you currently under the influence
20   of any drugs, medicine, pills or alcoholic beverage?
21   DEFENDANT CHARLES BOBO: No, sir.
22   THE COURT: Mrs. Mary Bobo, what is your full
23   name?
24   DEFENDANT MARY BOBO: Mary Elizabeth Wages Bobo.
25   THE COURT: How old are you?

**4**

1   DEFENDANT MARY BOBO: 40.
2   THE COURT: And how far have you gone in school?
3   DEFENDANT MARY BOBO: Two years of college.
4   THE COURT: Mrs. Bobo, have you recently been
5   treated by a physician or a psychiatrist for any reason?
6   DEFENDANT MARY BOBO: No, sir.
7   THE COURT: Have you recently been hospitalized
8   or treated for any narcotics addiction?
9   DEFENDANT MARY BOBO: No, sir.
10   THE COURT: And are you currently under the
11   influence of any drugs, medicine, pills or alcoholic
12   beverage?
13   DEFENDANT MARY BOBO: I take Synthroid and
14   Effexor.
15   THE COURT: All right. Ms. McCord, do you have
16   any doubt about her competence to enter a plea?
17   MS. MCCORD: None whatsoever, Your Honor.
18   THE COURT: Very good. Have each of you been
19   furnished a copy of the indictment returned against you?
20   Mr. Bobo?
21   DEFENDANT CHARLES BOBO: Yes, sir.
22   THE COURT: Mrs. Bobo?
23   DEFENDANT MARY BOBO: Yes, sir.
24   THE COURT: Have each of you been furnished a
25   copy of the felony information to which I understand you

**5**

1   are going to enter a guilty plea?
2   DEFENDANT CHARLES BOBO: Yes, sir.
3   THE COURT: Mrs. Bobo?
4   DEFENDANT MARY BOBO: Yes, sir.
5   THE COURT: I want each of you to understand that
6   you have certain rights. You have the constitutional
7   right to be charged by an indictment issued by a grand
8   jury. However, you can waive that right, that is, give up
9   that right and consent to being charged by the
10   information, which you have a copy of. The charges to
11   which you are going to enter a guilty plea have been
12   brought by the United States Attorney by the filing of the
13   information. But unless you give up your right to an
14   indictment, you may not be charged with a felony offense
15   unless the grand jury finds by returning an indictment
16   that there's probable cause to believe that a crime has
17   been committed and that each of you committed the crime as
18   set forth in the felony information. If you do not waive
19   the indictment, the government then may present the case
20   to the grand jury and ask it to indict you. And, of
21   course, they have already done that in this case.
22   Mr. and Mrs. Bobo, a grand jury is composed of at
23   least 16 and not more than 23 persons. And at least 12 of
24   the grand jurors must find that there's probable cause to
25   believe that you committed the crime with which you are

6

1  charged in the felony information. And a grand jury may
2  or may not indict you with those crimes.
3         Now, have you discussed, Mr. Bobo, your right to
4  an indictment and the giving up of that right and being
5  charged with a felony information? Have you discussed
6  that with Ms. Chartoff, your lawyer?
7         DEFENDANT CHARLES BOBO: Yes, sir.
8         THE COURT: Mrs. Wages -- Mrs. Bobo, have you
9  discussed that with your lawyer?
10         DEFENDANT MARY BOBO: Yes, sir.
11         THE COURT: And Mr. Bobo, do you understand your
12  right to have any felony charge against you brought by an
13  indictment issued by a grand jury?
14         DEFENDANT CHARLES BOBO: Yes, sir.
15         THE COURT: And Mrs. Bobo, do you understand your
16  right to have any felony charge against you brought by an
17  indictment issued by a grand jury?
18         DEFENDANT MARY BOBO: Yes, sir.
19         THE COURT: Have either of you been threatened in
20  any way to give up your right to an indictment? Mr. Bobo?
21         DEFENDANT CHARLES BOBO: No.
22         THE COURT: Mrs. Bobo?
23         DEFENDANT MARY BOBO: No, sir.
24         THE COURT: Have any promises been made to either
25  of you to get you to give up your right to an indictment?

7

1  Any promise other than the plea agreement, Mr. Bobo?
2         DEFENDANT CHARLES BOBO: No, sir.
3         THE COURT: Mrs. Bobo?
4         DEFENDANT MARY BOBO: No, sir.
5         THE COURT: Mr. Bobo, having heard the rights
6  that you have, is it your desire to give up your right to
7  an indictment and allow the government to proceed against
8  you on the felony information?
9         DEFENDANT CHARLES BOBO: Right.
10         THE COURT: Mrs. Bobo, the same for you?
11         DEFENDANT MARY BOBO: Yes, sir.
12         THE COURT: All right. I need both of you to
13  sign a form indicating that you have been advised of your
14  rights and that you are giving up your right to an
15  indictment.
16         MS. CHARTOFF: (complies)
17         DEFENDANT CHARLES BOBO: (complies)
18         DEFENDANT MARY BOBO: (complies)
19         MS. MCCORD: (complies)
20         THE COURT: All right. We will now proceed with
21  the plea colloquy. Mr. Bobo, you may be seated. I will
22  proceed first with Mrs. Bobo.
23         MS. CHARTOFF: Your Honor.
24         THE COURT: Yes.
25         MS. CHARTOFF: I don't believe we have signed the

8

1  consent to magistrate.
2         THE COURT: You have not. And that's the next
3  thing I was going to ask.
4         MS. CHARTOFF: Okay, sir.
5         THE COURT: Perhaps I should do that collectively
6  too. Mr. and Mrs. Bobo, I am a United States Magistrate
7  Judge. The next higher ranking Judge is a District Judge,
8  and you have the right to have these proceedings conducted
9  and your guilt adjudicated by the District Judge.
10  However, you may consent to my conducting these
11  proceedings and to adjudicating you guilty based on your
12  guilty plea. Mr. Bobo, do you understand the rights as I
13  have explained them to you about your right to a District
14  Judge conducting the proceeding?
15         DEFENDANT CHARLES BOBO: Yes, sir.
16         THE COURT: Mrs. Bobo, do you understand those
17  rights?
18         DEFENDANT MARY BOBO: Yes, sir.
19         THE COURT: Have each of you talked with your
20  lawyer about consenting to my conducting this proceeding?
21  Mr. Bobo?
22         DEFENDANT CHARLES BOBO: Yes, sir.
23         THE COURT: And do you wish me to conduct these
24  proceedings?
25         DEFENDANT CHARLES BOBO: Yes, sir.

9

1         THE COURT: All right, sir. Mrs. Bobo, have you
2  talked with your lawyer, Ms. McCord, about my conducting
3  these proceedings?
4         DEFENDANT MARY BOBO: Yes, sir.
5         THE COURT: And do you wish me to conduct these
6  proceedings?
7         DEFENDANT MARY BOBO: Yes, sir.
8         THE COURT: I need, therefore, each of you to
9  sign the consent forms indicating your consent.
10         DEFENDANT CHARLES BOBO: (complies)
11         DEFENDANT MARY BOBO: (complies)
12         MS. MCCORD: (complies)
13         MS. CHARTOFF: (complies)
14         THE COURT: All right. Now I will proceed with
15  Mrs. Bobo. You may be seated, Mr. Bobo. Thank you.
16         Mrs. Bobo, have you received a copy of the felony
17  information on which -- to which you are going to enter a
18  guilty plea?
19         DEFENDANT MARY BOBO: Yes, sir.
20         THE COURT: And have you discussed the charge in
21  that information with Ms. McCord, your lawyer?
22         DEFENDANT MARY BOBO: Yes, sir.
23         THE COURT: And do you understand that charge?
24         DEFENDANT MARY BOBO: Yes, sir.
25         THE COURT: Are you fully satisfied with

10

1  Ms. McCord's representation of you in this case?

2      DEFENDANT MARY BOBO: Yes, sir.

3      THE COURT: I have before me the original plea

4  agreement in this case. Mrs. Bobo, I am turning to page

5  ten of that agreement. I am showing you -- Mrs. Bobo,

6  look up here. I am showing you that agreement. That

7  appears to be your signature. Is that your signature?

8      DEFENDANT MARY BOBO: Yes, sir.

9      THE COURT: Before signing this plea agreement,

10  did you have an opportunity to read it and to discuss the

11  terms of it with Ms. McCord, your lawyer?

12      DEFENDANT MARY BOBO: Yes, sir.

13      THE COURT: Do you understand the terms of the

14  plea agreement?

15      DEFENDANT MARY BOBO: Yes, sir.

16      THE COURT: Is this the entire agreement which

17  you have with the United States?

18      DEFENDANT MARY BOBO: Yes, sir.

19      THE COURT: Other than this plea agreement, has

20  anyone made any promise to you to get you to plead guilty?

21      DEFENDANT MARY BOBO: No, sir.

22      THE COURT: Mrs. Bobo, the terms of this plea

23  agreement and the recommendation about sentencing are

24  merely that. They are recommendations to the Court, and

25  the Court is not bound by these recommendations. At a

11

1  later time the sentencing judge will review this plea

2  agreement and will decide whether you will be sentenced in

3  accordance with it. If the sentencing judge decides that

4  he will not follow this plea agreement, you will be

5  notified of that and at that time you will have the right

6  to withdraw your guilty plea. Do you understand that?

7      DEFENDANT MARY BOBO: Yes, sir.

8      THE COURT: At that time, if you decide to not

9  withdraw your guilty plea, the Court may then impose on

10  you any lawful sentence, even if it is different or more

11  severe than the sentence you expect. Do you understand

12  that?

13      DEFENDANT MARY BOBO: Yes, sir.

14      THE COURT: Has anyone attempted in any way to

15  force you to plead guilty in this case?

16      DEFENDANT MARY BOBO: No, sir.

17      THE COURT: Mrs. Bobo, the offense to which you

18  are entering a guilty plea is contained in the felony

19  information, which charges you with wrongful distribution

20  or possession of a listed chemical in violation of 21

21  U.S.C. Section 941(f)(1), a felony offense. And upon

22  conviction of that offense, you may be deprived of

23  valuable civil rights, such as the right to vote, the

24  right to hold public office, the right to serve on a jury

25  and the right to possess any kind of firearm. Do you

12

1  understand that?

2      DEFENDANT MARY BOBO: Yes, sir.

3      THE COURT: The maximum punishment for this

4  offense is a term of imprisonment of not more than five

5  years, a fine of not more than two hundred 50 thousand

6  dollars or both the fine and the imprisonment. Upon

7  release from imprisonment, you will be subject to a period

8  of supervised release of not more than three years. You

9  would be required to pay to the Court an assessment fee in

10  the amount of one hundred dollars. Do you understand

11  that?

12      DEFENDANT MARY BOBO: Yes, sir.

13      THE COURT: Mrs. Bobo, once placed on supervised

14  release, should you violate the conditions of supervised

15  release, you can be given additional time in prison. Do

16  you understand that?

17      DEFENDANT MARY BOBO: Yes, sir.

18      THE COURT: Now, have you and Ms. McCord talked

19  about the sentencing guidelines and how they will apply in

20  your case?

21      DEFENDANT MARY BOBO: Yes, sir.

22      THE COURT: Mrs. Bobo, you understand that even

23  though the sentencing guidelines are no longer mandatory,

24  they are an important factor which the sentencing judge

25  must and will consider in imposing a sentence on you. Do

13

1  you understand that?

2      DEFENDANT MARY BOBO: Yes, sir.

3      THE COURT: Parole has been abolished, Mrs. Bobo,

4  and if sentenced to a term of imprisonment you will not be

5  released on parole. Do you understand that?

6      DEFENDANT MARY BOBO: Yes, sir.

7      THE COURT: Under the terms of this plea

8  agreement, Mrs. Bobo, you are giving up your right to

9  appeal or otherwise attack a sentence imposed on you in

10  any way with the exception of ineffective assistance of

11  counsel or prosecutorial misconduct. Do you understand

12  that?

13      DEFENDANT MARY BOBO: Yes, sir.

14      THE COURT: The government is not giving up its

15  right to appeal. And should the government file an appeal

16  in this case, you, however, would then have also the right

17  to appeal any sentence imposed on you. Do you understand

18  that?

19      DEFENDANT MARY BOBO: Yes, sir.

20      THE COURT: Mrs. Bobo, you have the right to

21  plead not guilty to the charge against you and to persist

22  in that plea. You would then have the right to a trial by

23  jury at which you would be presumed innocent and the

24  government would be required to prove your guilt beyond a

25  reasonable doubt. At that trial, you would have the right

14

1  to the assistance of counsel for your defense, the right
2  to see and hear all witnesses and have them cross-examined
3  in your defense, you would have the right on your own part
4  to decline to testify unless you voluntarily elected to do
5  so in your defense, and you would have the right to issue
6  subpoenas to compel witnesses to come to court to testify
7  in your defense.  Do you understand your right to a trial
8  and the other rights I have mentioned to you?
9        DEFENDANT MARY BOBO:  Yes, sir.
10       THE COURT:  At that trial, Mrs. Bobo, if you
11  decided to not put on any evidence or to not testify,
12  those facts could not be used against you.  Do you
13  understand that?
14       DEFENDANT MARY BOBO:  Yes, sir.
15       THE COURT:  Mrs. Bobo, by entering a plea of
16  guilty to the charge contained in the felony information
17  you are giving up your right to a trial.  There will be no
18  trial of any kind.  And based solely on your plea of
19  guilty, the Court will find you guilty and later impose
20  sentence on you.  Do you understand that?
21       DEFENDANT MARY BOBO:  Yes, sir.
22       THE COURT:  At a trial on these charges -- the
23  charge contained in the felony information, Mrs. Bobo, the
24  government would be required to prove beyond a reasonable
25  doubt that while aiding and abetting another person you

15

1  distributed a listed chemical in violation of 21 U.S.C.
2  Section 841 and that you did so knowingly.  Do you
3  understand what the government would be required to prove
4  at trial?
5        DEFENDANT MARY BOBO:  Yes, sir.
6        THE COURT:  Before I can accept your guilty plea,
7  I must be satisfied that there is a factual basis for it.
8  Who wishes to assist the Court with questioning Mrs. Bobo
9  on that?
10       MS. MCCORD:  I will do so, Your Honor.
11       THE COURT:  Please proceed.  Ms. McCord, if you
12  will pull that microphone a little closer to you so I can
13  hear you.
14       MS. MCCORD:  Yes, Your Honor.
15       THE COURT:  Thank you.
16                  EXAMINATION
17  BY MS. MCCORD:
18  Q.  Mrs. Bobo, were you at one point an owner and operator
19  of Horn Hill Grocery Store?
20  A.  Yes, sir -- ma'am.
21  Q.  And was that between the dates of April 10th, 2003 and
22  May 1st, 2003?
23  A.  Yes, ma'am.
24  Q.  And while being the owner-operator of Horn Hill
25  Grocery Store, did you have the occasion to sell

16

1  pseudoephedrine?
2  A.  Yes, ma'am.
3  Q.  Specifically on April 10th, 2003, did you or did you
4  aid and abet in selling six bottles and five sets of
5  blister packs that were stapled together of
6  pseudoephedrine?
7  A.  Yes, ma'am.
8  Q.  And on April 24th, 2003, did you either aid and abet
9  or sell, yourself, three hundred blister packs of
10  pseudoephedrine?
11  A.  Yes, ma'am.
12  Q.  Okay.  And on May 1st, 2003, did you either yourself
13  or aid and abet another sell four hundred eight blister
14  packs of pseudoephedrines and 26 bottles from the Horn
15  Hill Grocery Store?
16  A.  Yes, ma'am.
17  Q.  Did you do that with reason to believe that those
18  pseudoephedrine tablets would be used to make a controlled
19  substance?
20  A.  Yes, ma'am.
21  Q.  And was that in the Middle District of Alabama in
22  Covington County?
23  A.  Yes, ma'am.
24       THE COURT:  Is the government satisfied?
25       MS. HARDWICK:  Your Honor, I would like to

17

1  clarify just a couple of things.  Mrs. Bobo, while you
2  were the operator of Horn Hill Grocery, Ms. McCord has
3  referenced aiding and abetting.  By that do you understand
4  that either you sold it, your husband sold it, or another
5  employee sold it with your knowledge?
6        DEFENDANT MARY BOBO:  Yes, ma'am.
7        MS. HARDWICK:  And the parties agreed to
8  stipulate that the pseudoephedrine which was sold is a
9  Schedule II controlled substance.  The government would
10  also reference that the parties understand that each
11  pseudoephedrine tablet contained 60 milligrams of
12  pseudoephedrine.
13       THE COURT:  Is that correct, Ms. McCord?
14       MS. MCCORD:  Yes, Your Honor.
15       THE COURT:  Very good.
16       MS. HARDWICK:  Thank you, Your Honor.
17       THE COURT:  Mrs. Bobo, I have told you the rights
18  which you have and the rights which you give up by
19  entering a guilty plea.  Is it still your desire to plead
20  guilty to the charge contained in the felony information?
21       DEFENDANT MARY BOBO:  Yes, sir.
22       THE COURT:  Mrs. Bobo, to the charge against you
23  as contained in the felony information, how do you plead?
24       DEFENDANT MARY BOBO:  I plead guilty.
25       THE COURT:  Mrs. Bobo, the Court finds that you

**18**

1  are fully competent and capable of entering an informed
2  plea, that you are aware of the nature of the charge in
3  the felony information and the consequences of your plea.
4  I further find that your plea of guilty is a knowing and
5  voluntary plea supported by an independent basis in fact
6  containing each of the essential elements of the offense.
7  Your plea to the felony information is therefore accepted
8  and you are now adjudged guilty of that offense.
9       With respect to Mrs. Bobo, what is the
10 government's position concerning her release pending
11 sentencing?
12      MS. HARDWICK: Your Honor, the charges that she
13 has just entered a guilty plea does not carry a sentence
14 beyond five years, so the government is not asking that
15 she be detained.
16      THE COURT: Mrs. Bobo, I am going to order that
17 you be released on the same conditions previously imposed
18 on you pending sentence. Thank you, Mrs. Bobo. You may
19 be seated.
20      MS. MCCORD: Thank you, Your Honor.
21      THE COURT: Mr. Charles Bobo, if you will please
22 stand. Mr. Bobo, have you received a copy of the felony
23 information to which you have indicated you are going to
24 enter a guilty plea?
25      DEFENDANT CHARLES BOBO: Yes, sir.

**20**

1       THE COURT: Does this plea agreement represent
2  the entire and only agreement which you have with the
3  United States?
4       DEFENDANT CHARLES BOBO: Yes, sir.
5       THE COURT: Mr. Bobo, the terms of the plea
6  agreement, including the sentencing recommendation, are
7  merely recommendations to the Court. The sentencing judge
8  at a later date will review this plea agreement and decide
9  whether you will be sentenced in accordance with the plea
10 agreement. If the sentencing judge decides not to follow
11 the plea agreement, you will be notified of that and at
12 that time you will have the right to withdraw your guilty
13 plea. Do you understand that?
14      DEFENDANT CHARLES BOBO: Yes, sir.
15      THE COURT: At that time, if you decide to not
16 withdraw your guilty plea, the Court may impose on you any
17 lawful sentence, even if it is different from or more
18 severe than the sentence you expect. Do you understand
19 that?
20      DEFENDANT CHARLES BOBO: Yes, sir.
21      THE COURT: Has anyone attempted in any way to
22 force you to plead guilty in this case?
23      DEFENDANT CHARLES BOBO: No, sir.
24      THE COURT: The felony information to which you
25 are entering a guilty plea charges you with wrongful

**19**

1       THE COURT: And have you discussed that -- the
2  charges against you with your lawyer, Ms. Chartoff?
3       DEFENDANT CHARLES BOBO: Yes, sir.
4       THE COURT: And are you fully satisfied with
5  Ms. Chartoff's representation of you in this case?
6       DEFENDANT CHARLES BOBO: Yes, sir.
7       THE COURT: And do you understand the charge
8  contained in the felony information?
9       DEFENDANT CHARLES BOBO: Yes, sir.
10      THE COURT: I have before me the plea agreement
11 and I am turning to page ten of that agreement. I am
12 showing you that page, Mr. Bobo. That appears to be your
13 signature. Is it your signature?
14      DEFENDANT CHARLES BOBO: Yes, sir.
15      THE COURT: Before signing this plea agreement,
16 did you have an opportunity to read it and to discuss its
17 terms with Ms. Chartoff, your lawyer?
18      DEFENDANT CHARLES BOBO: Yes, sir.
19      THE COURT: And do you understand the terms of
20 the plea agreement?
21      DEFENDANT CHARLES BOBO: I sure do. Yes, sir.
22      THE COURT: Other than this plea agreement, has
23 anyone made any promise to you to get you to plead guilty
24 in this case?
25      DEFENDANT CHARLES BOBO: No, sir.

**21**

1  distribution or possession of a listed chemical and aiding
2  and abetting. That is a felony offense. And upon
3  conviction of that offense, you may be deprived of
4  valuable civil rights, such as the right to vote, the
5  right to hold public office, the right to serve on a jury
6  and the right to possess any kind of firearm. Do you
7  understand that?
8       DEFENDANT CHARLES BOBO: Yes, sir.
9       THE COURT: The maximum punishment for this
10 offense is a term of imprisonment of not more than five
11 years, a fine of not more than two hundred 50 thousand
12 dollars or both the fine and the imprisonment. Upon
13 release from imprisonment, you will be subject to a period
14 of supervised release of not more than three years. You
15 would be required to pay a one hundred dollar assessment
16 fee to the Court. Do you understand that?
17      DEFENDANT CHARLES BOBO: Yes, sir.
18      THE COURT: Once placed on supervised release,
19 should you violate the conditions of supervised release,
20 you can be given additional time in prison. Do you
21 understand that?
22      DEFENDANT CHARLES BOBO: Yes, sir.
23      THE COURT: Now, have you and Ms. Chartoff talked
24 about the sentencing guidelines and how they will apply in
25 your case?

22

1   DEFENDANT CHARLES BOBO: Yes, sir.
2       THE COURT: Mr. Bobo, even though the sentencing
3   guidelines are no longer mandatory, they are and remain an
4   important factor which the Court must consider in imposing
5   sentence on you. Do you understand that?
6       DEFENDANT CHARLES BOBO: Yes, sir.
7       THE COURT: If sentenced to a term of
8   imprisonment, you will not be released on parole. Parole
9   has been abolished. Do you understand that?
10      DEFENDANT CHARLES BOBO: Yes, sir.
11      THE COURT: Under the terms of this plea
12  agreement, Mr. Bobo, you are giving up your right to
13  appeal or otherwise attack any sentence imposed on you
14  with two exceptions. Those exceptions are ineffective
15  assistance of counsel or prosecutorial misconduct. The
16  government is not giving up its right to appeal. But if
17  the government should take an appeal of any sentence
18  imposed on you, you would then also have the right to
19  appeal. Do you understand that?
20      DEFENDANT CHARLES BOBO: Yes, sir.
21      THE COURT: Mr. Bobo, you have the right to plead
22  not guilty to the charges against you and to persist in
23  that plea. You would then have the right to a trial by
24  jury at which you would be presumed innocent and the
25  government would be required to prove your guilt beyond a

23

1   reasonable doubt. At that trial, you would have the right
2   to the assistance of counsel for your defense, the right
3   to see and hear all witnesses and have them cross-examined
4   in your defense, you would have the right on your own part
5   to decline to testify unless you voluntarily elected to do
6   so in your defense, and you would have the right to issue
7   subpoenas to compel witnesses to come to court to testify
8   in your defense. Mr. Bobo, do you understand your right
9   to a trial and the other rights I have mentioned to you?
10      DEFENDANT CHARLES BOBO: Yes, sir.
11      THE COURT: Mr. Bobo, at that trial, if you
12  decided to not testify or to not put on any evidence,
13  those facts could not be used against you. Do you
14  understand that?
15      DEFENDANT CHARLES BOBO: Yes, sir.
16      THE COURT: Mr. Bobo, by pleading guilty you are
17  giving up your right to a trial and the other rights I
18  have explained to you. There will be no trial of any
19  kind. And based solely on your guilty plea, the Court
20  will find you guilty and later impose sentence on you. Do
21  you understand that?
22      DEFENDANT CHARLES BOBO: Yes, sir.
23      THE COURT: At a trial, the government would be
24  required to prove beyond a reasonable doubt that while
25  aiding and abetting another person you distributed a

24

1   listed chemical in violation of 21 U.S.C. Section 841 and
2   that you did so knowingly. Do you understand what the
3   government would be required to prove at trial?
4       DEFENDANT CHARLES BOBO: Yes, sir.
5       THE COURT: Before I can accept your guilty plea,
6   I must be satisfied there is a factual basis for it. Who
7   wishes to assist the Court with questioning him?
8       MS. CHARTOFF: I will do so, Your Honor.
9       THE COURT: Thank you, Ms. Chartoff.
10              EXAMINATION
11  BY MS. CHARTOFF:
12  Q. Mr. Bobo, did you run a business known as the Horn
13  Hill Grocery Store?
14  A. Yes, ma'am.
15  Q. And did you do so between April 10th, 2003 and May
16  1st, 2003?
17  A. Yes, ma'am.
18  Q. And was that store in Covington County, Alabama?
19  A. Yes, ma'am.
20  Q. Now, while doing business in the Horn Hill Grocery
21  Store on April 10th, 2003, did you or did you aid and abet
22  someone else in selling six bottles and five sets of
23  blister packs of pseudoephedrine?
24  A. Yes, ma'am.
25  Q. And do you understand that each blister pack contains

25

1   six tablets?
2   A. Yes, ma'am.
3   Q. And do you understand that each tablet contains 60
4   milligrams of pseudoephedrine?
5   A. Yes, ma'am.
6   Q. Now, on April 24th, 2003, did you or did you aid and
7   abet someone else in selling three hundred blister packs
8   of pseudoephedrine to a cooperating individual who came in
9   the store?
10  A. Yes, ma'am.
11  Q. And on May 1st, 2003, did you or did you aid and abet
12  someone else in selling four hundred and eight blister
13  packs and 26 bottles of pseudoephedrine to the cooperating
14  individual at the store?
15  A. Yes, ma'am.
16  Q. Do you understand that each bottle contains 36
17  tablets --
18  A. Yes, ma'am.
19  Q. -- of pseudoephedrine? And did you have reason to
20  believe that the pseudoephedrine tablets would be used to
21  make a controlled substance?
22  A. Yes, ma'am.
23  Q. And specifically, that controlled substance would be
24  methamphetamine?
25  A. Yes, ma'am.

26

1   MS. HARDWICK: Your Honor, with one stipulation
2   is that the parties stipulate that the pseudoephedrine is
3   a controlled substance, a Schedule II controlled
4   substance.
5   THE COURT: Correct, Ms. Chartoff?
6   MS. CHARTOFF: Yes, sir, Your Honor.
7   THE COURT: Mr. Bobo, I have told you the rights
8   which you have and the rights which you give up by
9   entering a guilty plea to the felony information. Is it
10  still your desire to plead guilty to the charge against
11  you in that information?
12  DEFENDANT CHARLES BOBO: Yes, sir.
13  THE COURT: Mr. Bobo, to the charge against you
14  in the felony information, how do you plead?
15  DEFENDANT CHARLES BOBO: I plead guilty.
16  THE COURT: Mr. Bobo, the Court finds that you
17  are fully competent and capable of entering an informed
18  plea, that you are aware of the nature of the charge
19  against you and the consequences of your plea. The Court
20  further finds that your plea of guilty is a knowing and
21  voluntary plea supported by an independent basis in fact
22  containing each of the essential elements of the offense.
23  The Court therefore accepts your plea and you are now
24  adjudged guilty of the offense contained in the felony
25  information. Does the government object to his release on

27

1   the conditions previously?
2   MS. HARDWICK: No, we do not, Your Honor.
3   THE COURT: Mr. Bobo, I am ordering that you be
4   released on the conditions previously imposed on you
5   pending sentence. Anything further?
6   MS. HARDWICK: No, sir, Your Honor.
7   THE COURT: We will be in recess.
8   MS. CHARTOFF: Thank you, Your Honor.
9   THE COURT: Thank you both.
10  (At which time, 10:32 a.m., the hearing was
11  adjourned.)
12
13
14
15
16
17
18
19
20
21
22
23
24
25

28

1   COURT REPORTER'S CERTIFICATE
2   I certify that the foregoing is a correct
3   transcript from the record of proceedings in the
4   above-entitled matter.
5   This 19th day of June, 2007.
6
7   /s/ James R. Dickens
    Official Court Reporter
8
9   TRANSCRIBER'S CERTIFICATE
10  I certify that the foregoing is a true and
11  correct transcript, to the best of my ability, from the
12  stenographic notes provided to me by Official Court
13  Reporter James R. Dickens.
14  This 19th day of June, 2007.
15
16  /s/ Risa L. Entrekin
    Registered Diplomate Reporter
17  Certified Realtime Reporter
    Official Court Reporter
18
19
20
21
22
23
24
25


GOVERNMENT
EXHIBIT

1

```
 1          TITLE PAGE TO BE INSERTED

 2

 3

 4

 5

 6

 7     UNITED STATES OF AMERICA

 8          V.                          CR. NO. 2:05cr151-T

 9     MARY WAGES BOBO d/b/a
       HORN HILL GROCERY
10

11

12                      SENTENCING

13                  MAY 30, 2006

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                   P R O C E E D I N G S

 2                      (IN OPEN COURT)

 3            THE COURT:  THIS IS UNITED STATES OF AMERICA V.

 4  CHARLES DAVID BOBO AS WELL AS MARY WAGES BOBO, CASE NUMBER

 5  05-151.  WE ARE HERE FOR THE PURPOSE OF SENTENCING THESE

 6  TWO DEFENDANTS.

 7            IS THE GOVERNMENT READY TO PROCEED?

 8            MS. HARDWICK:  THE GOVERNMENT IS READY, YOUR

 9  HONOR.

10            THE COURT:  IS THE DEFENDANT, CHARLES DAVID BOBO,

11  READY TO PROCEED?

12            MS. CHARTOFF:  YES, YOUR HONOR.

13            THE COURT:  IS DEFENDANT MARY WAGES BOBO READY TO

14  PROCEED?

15            MS. MCCORD:  YES, YOUR HONOR.

16            THE COURT:  ALL RIGHT.  WHY DON'T WE DO THIS.

17  WHY DON'T WE START WITH CHARLES DAVID BOBO, YOU COME UP TO

18  THE PODIUM WITH YOUR ATTORNEY.  WHEN WE GET TO THE POINT

19  WHERE WE ARE TAKING TESTIMONY OR ALLOWING THE PEOPLE TO

20  SPEAK, WE'LL DO IT WITH REGARD TO BOTH OF THEM, AND I WILL

21  SENTENCE THEM APART TO THAT EXTENT.

22            ALL RIGHT.  MS. CHARTOFF, HAVE YOU AND YOUR

23  CLIENT HAD AT LEAST THIRTY-FIVE DAYS TO REVIEW THE

24  PRESENTENCE REPORT, THE ORIGINAL PRESENTENCE REPORT IN

25  THIS CASE?
```

```
1              MS. CHARTOFF:  YES, YOUR HONOR.

2              THE COURT:  DID YOU FILE ANY OBJECTION TO THE

3    PRESENTENCE REPORT?

4              MS. CHARTOFF:  YES, YOUR HONOR.

5              THE COURT:  PARDON ME?

6              MS. CHARTOFF:  YES, SIR.

7              THE COURT:  YOU DID?

8              MS. CHARTOFF:  YES.  WE HAD FILED AN OBJECTION TO

9    THE INITIAL REPORT THAT WAS CORRECTED ON THE --

10             THE COURT:  ANY OBJECTION TO THE SUBSEQUENT

11   REPORT?

12             MS. CHARTOFF:  NO, YOUR HONOR.

13             THE COURT:  ANY OBJECTION TO THE MODIFIED

14   PRESENTENCE REPORT, FROM THE GOVERNMENT.

15             MS. HARDWICK:  NO, YOUR HONOR.

16             THE COURT:  THERE BEING NO FURTHER OBJECTIONS,

17   THE COURT ADOPTS THE PRESENTENCE REPORT AND THE FACTUAL

18   STATEMENTS CONTAINED IN THE PRESENTENCE REPORT AND MAKES

19   SPECIFIC FINDINGS THAT THE OFFENSE LEVEL IS 31, CRIMINAL

20   HISTORY CATEGORY IS ROMAN NUMERAL III, AND THE GUIDELINE

21   SENTENCING LEVEL IS 60 MONTHS.  SUPERVISED RELEASE PERIOD

22   IS TWO YEARS TO THREE YEARS, AND FINE RANGE FROM $15,000

23   TO $150,000.

24             THIS WOULD BE AN APPROPRIATE OPPORTUNITY, BEFORE

25   I ASK IF YOU HAVE ANYTHING TO SAY OR YOUR CLIENT HAS
```

1   ANYTHING TO SAY, IF WE ARE GOING TO HAVE ANY WITNESSES

2   THAT MIGHT TESTIFY ON BEHALF OF EITHER ONE OF THEM, TO

3   HAVE THEM DO THAT.  I HESITATE BRINGING FOLKS UP HERE.

4        HOW MANY PEOPLE ARE THERE?  I HESITATE BRINGING

5   THEM UP TO THE WITNESS STAND, BUT CERTAINLY WE CAN DO

6   THAT, DEPENDING ON HOW MANY WE ARE GOING TO HAVE AND

7   WHETHER THEY CAN SPEAK UP.

8        MS. MCCORD:  YOUR HONOR, IF I MAY.

9        THE COURT:  SURE.

10       MS. MCCORD:  IF WE CAN JUST SET A MICROPHONE HERE

11  AND THEY CAN JUST COME TO THIS POINT.

12       THE COURT:  HOW MANY ARE WE GOING TO HAVE?

13       MS. CHARTOFF:  I THINK THERE ARE ABOUT SIX PEOPLE

14  WHO WOULD LIKE TO SAY SOMETHING, YOUR HONOR.

15       THE COURT:  LET'S BRING THEM RIGHT UP TO THE

16  PODIUM.  IF YOU WOULD, HAVE A SEAT.

17       MS. HARDWICK:  YOUR HONOR, CAN THE GOVERNMENT

18  CLARIFY, SIX PER DEFENDANT OR SIX ALTOGETHER?

19       MS. CHARTOFF:  ALTOGETHER.

20       MS. MCCORD:  YOUR HONOR.

21       MR. GOOSEBY:  YOUR HONOR, MY NAME IS TIM

22  GOOSEBY--

23       THE COURT:  HANG ON JUST A SECOND.  LADIES AND

24  GENTLEMEN, LET ME JUST GIVE SOME INSTRUCTIONS.  WHEN YOU

25  COME UP HERE, I NEED TO MAKE SURE THAT YOU SPEAK UP LOUD

```
 1   ENOUGH FOR EVERYBODY TO HEAR YOU, START JUST LIKE THEY DID
 2   BY TELLING US YOUR NAME, TELL US THE COMMUNITY YOU LIVE
 3   IN, AND THEN TELL US WHATEVER YOU WANT TO SAY.  OF COURSE,
 4   THAT WOULD BE SUBJECT TO ANY OBJECTION BY THE GOVERNMENT
 5   OR THE DEFENDANTS, FOR THAT MATTER.  DON'T TALK REAL FAST;
 6   I HAVE A COURT REPORTER UP HERE THAT'S GOT TO TAKE
 7   EVERYTHING DOWN.  SOMETIMES FOLKS, WHEN THEY GET A LITTLE
 8   BIT NERVOUS -- NOT THAT YOU WOULD BE NERVOUS -- THEY TEND
 9   TO TALK RAPIDLY.  SOME PEOPLE DON'T TALK AT ALL WHEN THEY
10   ARE NERVOUS, AND SOME PEOPLE GET SCARED AND THEY GO REALLY
11   FAST.  BUT IF YOU WILL JUST SPEAK NORMALLY THAT WILL BE
12   GOOD.
13            NOW, ANYBODY WANT TO HAVE THESE WITNESSES SWORN
14   IN?
15            MS. HARDWICK:  NO, YOUR HONOR.
16            MS. MCCORD:  NOT FROM THE DEFENDANTS, YOUR HONOR.
17            MS. CHARTOFF:  NO, YOUR HONOR.
18            THE COURT:  IF YOU WOULD, START WITH YOUR NAME
19   AGAIN, PLEASE, SIR.
20            MR. GOOSEBY:  YOUR HONOR MY NAME IS TIM GOOSEBY,
21   SCHOOL TEACHER FROM OPP, ALABAMA.  I HAVE BEEN KNOWING
22   CHARLES AND BETH APPROXIMATELY FIFTEEN YEARS.  I LIVE IN
23   THE ROSE HILL COMMUNITY, WHICH IS ABOUT FIFTEEN MILES FROM
24   WHERE THEY LIVE.  CHARLES WORKED AS A BUS DRIVER AT THE
25   SCHOOL I AM AT, AND I'VE KNOWN HIM PERSONALLY FOR A YEAR
```

 1 | THERE.  AND AS FAR AS BEING REAL GOOD TO KIDS, I HAVE SEEN
 2 | HIM TAKE MONEY OUT OF HIS POCKET WHEN THEY DIDN'T HAVE
 3 | ANYTHING TO BUY FOR FOOD OR ANYTHING FOR RECESS AND STUFF
 4 | OF THIS TYPE.  AND I ALSO, DURING THESE YEARS, KNEW OF A
 5 | TIME WHEN ONE LITTLE BOY WAS AROUND TEN YEARS OLD,
 6 | SOMETHING HAPPENED, HIS PARENTS HE DIDN'T HAVE NOWHERE TO
 7 | LIVE.  HE TOOK THIS BOY IN, BOUGHT HIM CLOTHES, SENT HIM
 8 | TO SCHOOL.
 9 |     AND, LIKE I SAY, THE COMMUNITY DOWN THERE, HE WILL BE
10 | GREATLY MISSED.  HE IS THE TYPE FELLOW IF YOU CALL HIM,
11 | OLD LADY UP THE ROAD, IF YOU CALL HIM, HE WILL BE THERE.
12 | I DON'T KNOW WHAT HAPPENED WITH THE DEAL OF TROUBLE THEY
13 | GOT IN. IF HE WOULD HAVE KNEW IT WAS AGAINST THE LAW, I
14 | GUARANTEE YOU IT WOULD HAVE NEVER HAPPENED.
15 |     I HAVE SEEN, TIME AND TIME AGAIN, HE IS THE TYPE
16 | FELLOW IF I CALLED HIM AT TWO O'CLOCK IN THE MORNING, HE
17 | WOULD ASK NO QUESTIONS, HE WOULD BE THERE.  AND I BELIEVE
18 | IF HE WAS PUT IN JAIL SOMEWHERE, THE COMMUNITY WOULD BE
19 | GREATLY MISSED BY THE EFFORT HE PUTS OUT TO HELP PEOPLE.
20 |     HE IS THE TYPE FELLOW THAT WOULD GIVE YOU THE SHIRT
21 | OFF HIS BACK.  LIKE I SAY, THIS STUFF HE GOT RUN UP IN ON,
22 | IF HE HAD KNEW IT WAS BREAKING THE LAW, I GUARANTEE YOU HE
23 | WOULD HAVE NEVER HAVE DONE IT.  AND I APPRECIATE YOU
24 | CONSIDER THIS IN ANY DECISIONS THAT YOU HAVE.
25 |         THE COURT:  OKAY.  ANY QUESTIONS FROM ANYBODY OF

```
 1  THIS WITNESS?

 2           MS. HARDWICK:  NONE FROM THE GOVERNMENT.

 3           MS. CHARTOFF:  NONE FROM THE DEFENSE, YOUR HONOR.

 4           MS. MCCORD:  NO, YOUR HONOR.

 5           THE COURT:  LET'S DO IT THIS WAY.  WHEN I SAY

 6  THANK YOU TO THE WITNESS, IF YOU HAVE A QUESTION, YOU NEED

 7  TO SPEAK UP AT THAT POINT.  OTHERWISE, I WILL JUST ASSUME

 8  THAT NO ONE HAS ANY QUESTIONS.

 9           CALL YOUR NEXT WITNESS.

10           MS. CHARTOFF:  TERESA FLOYD.

11           THE COURT:  MS. FLOYD.

12           MS. FLOYD:  MY NAME IS TERESA J. FLOYD, I LIVE IN

13  BAGBY, ALABAMA.  CHARLES IS MY BROTHER.

14       I LOST MY JOB A MONTH AGO AND I WAS LOSING EVERYTHING

15  I HAD, AND MY BROTHER HAS HELPED ME SO MUCH.  I HAD NO

16  FOOD IN MY HOME.  MY HUSBAND IS HANDICAPPED.  AND HE SAID,

17  "SISTER, DON'T DO WITHOUT?"  I SAID, "IT'S NOT YOUR PLACE,

18  I AM 41 YEARS OLD AND I NEED TO PROVIDE FOR MY HOME."  HE

19  SAID "I AM NOT GOING TO LET YOU STARVE TO DEATH."

20       AND YOUR HONOR, IF IT WAS NOT FOR HIM AND HIS WIFE, I

21  WOULDN'T BE HERE TODAY BECAUSE I NEAR ABOUT HAD A NERVOUS

22  BREAKDOWN BECAUSE MY HUSBAND CANNOT WORK.  AND HE WOULD

23  TAKE ANYTHING THAT YOU NEEDED, ANY TIME OF THE DAY OR

24  NIGHT, AND HE WOULD SEE TO IT THAT YOU HAD IT.

25           MY BOYS HAD A WRECK IN '99, AND I WAS OUT OF
```

1  WORK, AND IF IT HADN'T HAVE BEEN FOR HIM HELPING ME THEN

2  AND HELPING THE REST OF MY FAMILY GO THROUGH THIS, WE

3  WOULD HAVE NEVER MADE IT.  WHEN MY HUSBAND BECAME

4  DISABLED, I HAD TO QUIT MY JOB.  I WAS BORN TO NURSING AND

5  I HAD TO REHABILITATE MY HUSBAND.  AND IF IT HADN'T HAVE

6  BEEN FOR HIM SUPPORTING ME WHEN THAT HAPPENED AND PUTTING

7  SMILES ON MY FACES, I DON'T BELIEVE I COULD BE HERE TODAY

8  TO TELL HOW GOOD OF A PERSON CHARLES IS.

9          AND THIS LITTLE BOY DIDN'T HAVE NOWHERE TO GO,

10 AND HE LOVED HIM LIKE HIS SON, AND WE LOVED HIM LIKE OUR

11 NEPHEW.  AND I PROMISE YOU, YOUR HONOR, CHARLES IS THE

12 BEST PERSON ANYBODY IN THIS WORLD COULD WANT FOR A FRIEND,

13 A BROTHER, AND A FATHER.  AND I WISH YOU WOULD TAKE THIS

14 IN CONSIDERATION.  AND HE DOES THE BEST HE CAN, AND HE

15 DOES IT FROM THE BOTTOM OF HIS HEART.  HE LOVES EVERYBODY.

16 AND THAT'S ALL I HAVE TO SAY.

17          THE COURT:  YOU CAN HAVE A SEAT.  CALL YOUR NEXT

18 WITNESS.

19          MS. CHARTOFF:  DEANA ROGERS.

20          MS. ROGERS:  THANK YOU, YOUR HONOR.  MY NAME IS

21 DEANA ROGERS, I LIVE IN ONYCHA, ALABAMA, THAT'S SIX MILES

22 OUT OF OPP AND ABOUT THREE MILES AWAY FROM CHARLES AND

23 BETH.  THAT'S MY BABY BROTHER AND MY SISTER-IN-LAW.  AND

24 ALL I HAVE GOT TO SAY IS HE IS A VERY GOOD PERSON; HE IS

25 JUST LIKE THE OTHERS.  NO MATTER WHERE YOU ARE AT OR

```
 1  WHAT'S WRONG, HE'LL COME TO YOU AND HELP YOU.  IF YOU
 2  DON'T EVEN HAVE A PAIR OF SHOES OR SHIRT ON YOUR BACK, HE
 3  WOULD MAKE SURE YOU WOULD HAVE IT.
 4        MY HUSBAND WAS A TRUCK DRIVER.  HE HAS GOT
 5  PARKINSON'S DISEASE AND HE HAD A STROKE AND HEART ATTACK
 6  IN MIAMI.  AND CHARLES WAS DRIVING A TRUCK, AND BETH WAS.
 7  I HAD CALLED THEM TO ASK THEM WHERE WERE THEY AT BECAUSE I
 8  NEEDED TO GET TO MY HUSBAND.  THEY WERE IN TEXAS, AND THEY
 9  TOLD ME AS SOON AS THEY GOT THERE THEY WOULD TAKE ME, BUT
10  I HAD GOT THERE BEFORE THEY GOT HOME.  AND MY SON AND MY
11  DAUGHTERS LOVES HIM TO DEATH.
12        MOST OF THE TIME, I AM WORKING NIGHTS AND DAYS
13  AND HAVE TO HAVE BABYSITTERS, AND ALL I HAVE TO DO IS PICK
14  UP THE PHONE AND ASK HIM, "COULD YOU TAKE CARE OF MY
15  YOUNGEST WHILE I WORK SO I CAN PROVIDE FOR MY FAMILY?"
16        I HAVE BEEN STRUGGLING SINCE '95, MY HUSBAND GOT
17  HURT, THEY HAD HIM DOWN TO DIE.  BUT ANY TIME I NEED MY
18  FAMILY, I WOULD SAY WE ARE THERE.  AND I DON'T CARE WHAT
19  TIME OF DAY OR NIGHT OR WHO IT WAS, THEY ARE THERE.  AND
20  MAY GOD BE WITH HIM, AND I APPRECIATE THIS.  THANK YOU.
21        MS. CHARTOFF:  YOUR HONOR, WITH THE COURT'S
22  INDULGENCE, MR. BOBO'S MOTHER WOULD LIKE TO SAY SOMETHING
23  ALTHOUGH THAT WILL BRING THE TALLY TO SEVEN SPEAKERS, IF
24  THAT'S ALL RIGHT WITH THE COURT AND THE GOVERNMENT.
25        MS. BOBO:  YOUR HONOR, I AM NANCY BOBO; I AM
```

1  CHARLES' MOTHER.  AND I WANT TO SAY THAT I WAS TOLD THAT

2  HE WAS BEING INVESTIGATED AND I WENT DOWN AND TALKED TO

3  CHARLES AT THE STORE AT THAT TIME.  OF COURSE, IT'S BEEN A

4  LONG TIME AGO BECAUSE THEY HAVEN'T BEEN AT THE STORE FOR

5  OVER TWO YEARS NOW, OR LONGER, AND HE TOLD ME THAT HE WAS

6  TOLD TO SELL THE PILLS SO THEY COULD CATCH THE ONES

7  COOKING THE STUFF.  AND I ASKED HIM TO PLEASE STOP.  I

8  DON'T KNOW WHETHER HE DID AT THE TIME OR NOT.  BUT I WANT

9  TO TELL YOU THIS MORNING I LOVE MY SON, AND IF THERE IS

10 ANYWAY THAT YOU COULD HAVE LENIENCY ON HIM, MAY GOD BLESS

11 YOU FOR IT.

12         I DON'T THINK THAT THEY KNEW REALLY THAT THEY

13 WERE DOING WRONG.  I DON'T BELIEVE THAT IN MY HEART.  IF

14 THEY DID, I WOULD SAY GO AHEAD, BUT I CAN'T BELIEVE THAT

15 IN MY HEART BECAUSE I TALKED TO THEM.  AND I KNOW THEY

16 DIDN'T THINK THEY WERE DOING WRONG.  I DON'T BELIEVE IT.

17         WOULD YOU PLEASE HAVE LENIENCY ON THEM WHEN YOU

18 GO TO SENTENCE THEM?  IF YOU HAVE ANY CHILDREN, I KNOW HOW

19 YOU FEEL TOWARD THEM, AND I LOVE MY CHILDREN.  I LOVE THEM

20 WITH ALL OF MY HEART.  AND SINCE HE LEFT THE STORE HE HAS

21 NOT BEEN HAD NOTHING TO DO WITH THIS.

22         HE IS AGAINST DOPE.  HE IS TOTALLY AGAINST ANYONE

23 THAT USES IT.  AND HE DIDN'T ACTUALLY KNOW WHAT HE WAS

24 DOING.

25         I THANK YOU, YOUR HONOR, FOR LETTING ME HAVE THIS

1    SAY.  MAY GOD BLESS YOU.

2         MS. MCCORD:  YOUR HONOR, I CALL TRACY WALKER,

3    YOUR HONOR, THEN MR. CHARLES TITAN.

4         MR. TITAN:  YOUR HONOR, MY NAME IS CHARLES

5    TITAN.  I AM HERE TO SPEAK ON BEHALF OF CHARLES AND BETH.

6    THEY ARE PERSONAL FRIENDS OF MINE.  WE HAVE HUNG OUT

7    TOGETHER AND WENT TO NASCAR RACES TOGETHER.  I RUN A

8    RACING BUSINESS MYSELF.  AND CHARLES AND BETH BOTH HAVE

9    BEEN INVOLVED IN THAT SPORT WITH ME AND MY SON, AND THEY

10   HAVE BEEN THERE ON OUR BEHALF.  AND I WAS UNAWARE OF THE

11   TROUBLE THAT THEY ARE IN.

12       I CAME INTO THEIR LIVES, BASICALLY, AFTER THE FACT.

13   AND WE BECAME CLOSE FRIENDS FOR ABOUT TWO AND A HALF,

14   THREE YEARS.  AND LIKE I SAID, THEY HAVE HUNG OUT WITH US

15   AND WE WENT ON VACATIONS TOGETHER.  AND I WAS UNAWARE THAT

16   CHARLES OR BETH EITHER ONE WAS INVOLVED IN ANYTHING LIKE

17   THIS.  AND THE CONSEQUENCES OF THEIR ACTIONS, I BELIEVE

18   THAT THEY WERE REALLY UNAWARE OF THE IMPACT OF WHAT WAS

19   GOING ON AT THE TIME.

20       I NEVER SEEN HIM USE ANY ILLEGAL SUBSTANCE.  HE RAISED

21   HIS SON NOT TO USE DRUGS AND BE INVOLVED IN ANY DRUGS, AND

22   THERE IS DAVID SITTING THERE, AND HE HAS GROWN UP TO BE A

23   FINE, YOUNG MAN.  AND WE CARED FOR THESE PEOPLE.  AND IT'S

24   JUST LIKE THESE PEOPLE WERE TALKING ABOUT, THIS FAMILY.

25   YOU MAYBE MIGHT WANT TO GET A SENSE OF MAYBE THEY ARE

```
 1   EXAGGERATING THE POINT BECAUSE FAMILY LOVES FAMILY.  BUT
 2   THEY ARE NOT EXAGGERATING THESE POINTS THEY ARE MAKING.
 3       I COULD CALL ON CHARLES BOBO, JUST LIKE THESE PEOPLE
 4   SAID.  I RUN A TRUCKING BUSINESS, AND HE GOT INTO THE
 5   TRUCKING BUSINESS THROUGH ME BECAUSE WHEN HE GOT RID OF
 6   HIS STORE HE WORKED HARD, AND I NEVER SEEN A MAN WORK AS
 7   HARD AS HE DOES.  I USED TO JOKE WITH HIM ALL THE TIME
 8   THAT I WOULD BE A WEALTHY MAN IF I WORKED AS HARD AS YOU
 9   DO BECAUSE ALWAYS HAD A JOB, EVEN IN THE STRESSFUL
10   SITUATION THAT HE IS IN NOW.  HE LOST HIS TRUCKING
11   PRIVILEGE BECAUSE OF THE TROUBLE, AND YET HE WENT OUT AND
12   FOUND ANOTHER JOB AND HE HAS BEEN WORKING TWELVE, SIXTEEN
13   HOURS A DAY EVER SINCE.  AND HE HAS DONE EVERYTHING IT'S
14   TOOK TO PROVIDE FOR THE NEEDS OF HIS FAMILY.
15       AND HE HAS LIVED UP TO ME TO THE STANDARD OF SOMEONE
16   THAT I WAS PROUD TO CALL MY FRIEND BECAUSE OF, LIKE I
17   SAID, I DIDN'T UNDERSTAND THE IMPACT OF THE TROUBLE HE WAS
18   IN. AND WITHIN THAT COMMUNITY, THE WHOLESALER SELLS THESE
19   PILLS, THEN THE STORES SELL THEM OUT TO THE PUBLIC.
20       MS. HARDWICK:  YOUR HONOR, WE WOULD OBJECT TO
21   THIS LINE OF STATEMENT.
22       THE COURT:  HANG ON JUST A SECOND.
23       MS. HARDWICK:  WE WOULD OBJECT TO ANY REFERENCE
24   UNLESS HE HAS FIRST-HAND KNOWLEDGE, HE CAN NAME THE
25   WHOLESALERS AND HE HAS PERSONALLY SEEN WHAT HAS HAPPENED.
```

```
 1              THE COURT:  ALL RIGHT.

 2              MR. TITAN:  EXCUSE ME, YOUR HONOR.

 3              THE COURT:  I AM GOING TO OVERRULE THE OBJECTION.

 4  GO AHEAD.

 5              MR. TITAN:  BUT ANYWAY, I AM JUST HERE AS A

 6  CHARACTER WITNESS TO CHARLES.  AND HE IS A HARD-WORKING

 7  MAN, HE IS DILIGENT IN HIS WAYS.  AND I MEAN, HE DIDN'T

 8  UNDERSTAND THAT THERE WERE SUCH DRAMATIC CONSEQUENCES IN

 9  THESE ACTIONS.  AND I KNOW HIM PERSONALLY AND WE CARE FOR

10  HIM, AND I JUST THANK YOU, SIR, FOR LISTENING TO ME.

11              THE COURT:  YES, SIR.

12              MS. MCCORD:  YOUR HONOR, I CALL ELSIE WAGES.

13              MS. WAGES:  HI, I AM ELSIE WAGES.  I AM MARY

14  WAGES BOBO'S MOTHER AND CHARLES MOTHER-IN-LAW.  AND I JUST

15  WANT TO TELL Y'ALL THAT THEY ARE VERY CARING PEOPLE.  I

16  LOVE MY DAUGHTER, I LOVE MY SON-IN-LAW JUST LIKE HE WAS MY

17  SON.  I HAVE FOUR DAUGHTERS.  I DON'T KNOW WHAT IT'S LIKE

18  TO HAVE A SON.  BUT I TREAT MY OWN, MY SON-IN-LAWS AS IF

19  THEY WERE MY SONS.  AND THERE IS NO EXCEPTION WITH

20  CHARLES.  HE WORKS HARD.  I AM DISABLED, I HAVE TO HAVE,

21  AT TIMES, PEOPLE TO TAKE ME TO THE DOCTORS.  MY DOCTORS

22  ARE LOCATED IN ENTERPRISE, AND I HAVE TO HAVE SOMEBODY

23  SOMETIMES TO DRIVE ME TO THE DOCTORS.  RIGHT NOW SHE IS

24  THE ONLY DAUGHTER THAT'S NOT WORKING THAT IF I NEED TO GO

25  PLACES THAT I CAN CALL ON TO HAVE HER CARRY ME WHERE I
```

1   NEED TO GO.

2       I AM JUST HOPING THAT YOU WILL TAKE EVERYTHING INTO

3   CONSIDERATION ABOUT THESE TWO.  LIKE I SAY, SHE IS MY

4   OLDEST DAUGHTER AND I AM VERY PROUD TO HAVE HER AS MY

5   DAUGHTER.  AND I LOVE CHARLES, LIKE I SAID, AS IF HE WERE

6   MY SON.  AND WITHOUT THEM, I DON'T KNOW WHAT I WOULD DO.

7   BUT WHATEVER YOU DECIDE, WE ARE A HARD-WORKING PEOPLE AND

8   WE BELIEVE THAT RIGHT WILL COME OUT OF THIS WHICHEVER WAY,

9   AND WE'LL STILL BE THE SAME HARD-WORKING AND HONEST PEOPLE

10  AS WE CAN BE.  AND WE'LL SUPPORT THESE TWO NO MATTER WHAT.

11      THEIR FAMILY IS LIKE MY FAMILY, HIS SISTERS, HIS

12  MOTHER AND HIS DADDY.  I HAVE KNOWN THEM; WE USED TO DRIVE

13  TOGETHER.  WHEN MY HUSBAND WAS ALIVE, WE WERE ALL WORKING

14  WITH THE SAME COMPANY.  MY HUSBAND IS DECEASED NOW, AND

15  I'M DISABLED TO WORK.  THEY DON'T LIVE THAT FAR FROM ME,

16  AND I LIVE IN THE CEDAR GROVE COMMUNITY ABOUT SIX MILES

17  NORTHWEST OF OPP.  THEY LIVE APPROXIMATELY THREE MILES

18  FROM ME.  I SEE THEM REGULAR, I VISIT THEIR HOMES, THEY

19  VISIT MINE.  WE HAVE DINNERS, WE INVITE EACH OTHERS FAMILY

20  TO OUTINGS.  WE ARE LIKE ONE BIG FAMILY.  I DO THAT TO ALL

21  MY SONS' FAMILIES.  THEY ARE INVITED TO MY HOME,

22  WHATEVER.

23      AND LIKE I SAY, I JUST HOPE YOU WILL TAKE ALL THIS

24  INTO CONSIDERATION BECAUSE I KNOW THIS IS HARD FOR

25  EVERYBODY, BUT I JUST WANTED YOU TO KNOW THAT I LOVE MY

1   FAMILY, I LOVE MY DAUGHTER AND MY SON-IN-LAW, AND I JUST

2   HOPE THAT YOU TAKE IT IN CONSIDERATION AND HAVE MERCY ON

3   THEM.  THANK YOU.

4         THE COURT:  ANY OTHER WITNESSES?

5         MS. MCCORD:  MICHELLE HARRISON, YOUR HONOR.

6         MS. HARRISON:  YOUR HONOR, MY NAME IS MICHELLE

7   HARRISON, AND I LIVE IN ELBA, ALABAMA.  BETH IS MY OLDEST

8   SISTER, AND WITHOUT HER, I DON'T KNOW THAT I COULD GO ON.

9   SHE IS A LOVING SISTER AND, LIKE MY MOTHER WAS SAYING, I

10  HAVE TWO OTHER SISTERS AND CAN CALL ON BETH AND CHARLES AT

11  ANY TIME AND THEM BE THERE FOR US.  THEY ARE GOOD PEOPLE.

12     AND LIKE THEY WERE SAYING, THEY TOOK THE LITTLE BOY IN

13  AND HELPED RAISE THIS CHILD.  THEY HAVE A GRANDDAUGHTER

14  THAT'S JUST TURNED ONE YEAR OLD AND SHE NEEDS HER, HER

15  MIMI AND PAPA BACK HOME THIS AFTERNOON.

16     AND I JUST ASK THAT YOU BE LENIENT ON THEM AND LET

17  THEM GO BACK HOME THIS AFTERNOON, BECAUSE WE NEED THEM

18  THERE FOR US.  BECAUSE WITHOUT THEM, LIKE I SAID, I DON'T

19  KNOW WHAT WE WOULD DO.  I THANK YOU.

20         THE COURT:  OKAY.  ANY OTHERS?

21         MS. MCCORD:  NO, YOUR HONOR.  BUT JUST FOR THE

22  RECORD, I WOULD LIKE TO SAY JAMES BOBO, THE FATHER OF

23  CHARLES BOBO IS HERE; NANCY BOBO, THE MOTHER OF CHARLES

24  BOBO IS HERE; HEATHER AND DAVID BOBO, WHO IS THE SON AND

25  DAUGHTER-IN-LAW OF MARY AND CHARLES BOBO; TIM AND JANELL

1  GOOSEBY ARE HERE, THEY ARE CLOSE FRIENDS OF THE BOBOS;

2  LINDA HOLLYHEHAD IS THE AUNT OF MARY BOBO; DEANA ROGERS IS

3  THE SISTER OF CHARLES BOBO; TERESA FLOYD IS THE SISTER OF

4  CHARLES BOBO, CHARLES TITAN IS A FRIEND TO BOTH THE BOBOS;

5  ELSIE WAGES IS THE MOTHER OF MARY BOBO; MICHELLE HARRISON

6  IS THE SISTER OF MARY BOBO; TRACY WALKER IS THE SISTER OF

7  MARY BOBO; AND JEANIE HIDEKIN IS THE SISTER OF MARY BOBO.

8  AND THEY WERE ALL PRESENT IN THE COURTROOM SUPPORTING THE

9  BOBOS.

10         THE COURT:  LET ME ASK YOU THIS QUESTION.  I

11  DON'T SEE ANY OBJECTIONS TO THE FINAL PRESENTENCE REPORT.

12  ARE THERE ANY OBJECTIONS FROM YOUR CLIENT?

13         MS. MCCORD:  NO, YOUR HONOR.

14         THE COURT:  ANY OBJECTION FROM THE GOVERNMENT TO

15  THAT PRESENTENCE REPORT?

16         MS. HARDWICK:  NO, YOUR HONOR.

17         THE COURT:  WITH REGARD TO THAT PARTICULAR

18  PRESENTENCE REPORT, WITH REGARD TO MARY WAGES BOBO, THE

19  COURT ADOPTS THE PRESENTENCE REPORT AND THE FACTUAL

20  STATEMENTS CONTAINED IN THE PRESENTENCE REPORT AND MAKES

21  SPECIFIC FINDINGS THAT THE OFFENSE LEVEL IS 31, CRIMINAL

22  HISTORY CATEGORY IS ROMAN NUMERAL I, AND THE GUIDELINE

23  SENTENCE RANGE IS FROM -- IS 60 MONTHS.  SUPERVISED

24  RELEASE PERIOD TWO YEARS TO THREE YEARS, AND THE FINE

25  RANGE IS FROM $15,000 TO $150,000.

1    ALL RIGHT.  IF I COULD GET BOTH DEFENDANTS AND

2    THEIR ATTORNEYS UP HERE AT THE PODIUM FOR ME, PLEASE.

3    MS. CHARTOFF, WE'LL START WITH YOU.  DO YOU HAVE

4    ANYTHING TO SAY IN MITIGATION OR OTHERWISE BEFORE I

5    PRONOUNCE THE SENTENCE OF LAW UPON YOUR CLIENT?

6    MS. CHARTOFF:  JUST BRIEFLY, YOUR HONOR.

7    MR. BOBO, AS YOU HAVE HEARD FROM THESE WITNESSES TODAY, IS

8    A GOOD MAN.  HE IS GENEROUS TO PEOPLE, HE SUPPORTS HIS SON

9    AND DAUGHTER-IN-LAW AND THEIR YOUNG BABY.  HE HELPS PEOPLE

10   IN NEED.  I ACTUALLY MET ALSO, HE WASN'T ABLE TO BE HERE

11   TODAY, BUT THERE IS AN ELDERLY MAN WHO LIVES ALONE IN A

12   SHACK SLIGHTLY DOWN THE STREET FROM MR. BOBO IN THIS

13   COUNTRY PART OF OPP, AND MR. BOBO HAS FIXED THE MAN'S

14   ROOF, FIXED HIS REFRIGERATOR, BRINGS HIM FOOD.  HE IS

15   REALLY JUST AN EXCEPTIONALLY-GENEROUS PERSON.  THIS IS A

16   MAN WHO HAS NO FAMILY, HAS NO ONE LOOKING OUT FOR HIM AND

17   REFUSES TO LEAVE THIS SHACK WHERE HE LIVES.  SO MR. BOBO

18   AND BETH, I AM SURE, TOO, MS. BOBO, LOOK OUT FOR HIM.

19   JUST A FEW MORE ITEMS, YOUR HONOR.  MR. BOBO IS NOT

20   HERE TO SAY THAT HE DIDN'T DO WRONG.  HE FULLY TAKES

21   RESPONSIBILITY FOR HIS ACTIONS.

22   AND FINALLY, YOUR HONOR, THE BOBOS CLOSED THE STORE

23   ABOUT TWO YEARS BEFORE THIS CASE WAS BROUGHT, JUST STOPPED

24   SELLING PSEUDOEPHEDRINE AND EVERYTHING AND BEGAN DRIVING

25   TRUCKS OF THEIR OWN VOLITION.  AND SO, YOUR HONOR, I THINK

1  THAT SPEAKS WELL OF THEM, ALTHOUGH THEY DID SELL THE

2  PSEUDOEPHEDRINE WHILE ON THE OCCASIONS THAT ARE DISCUSSED

3  IN THE INDICTMENT, YOUR HONOR.

4         SO FINALLY, I WOULD JUST LIKE TO SAY, ASK THE

5  COURT TO ACCEPT THE PLEA AGREEMENT.  THIS IS A GOOD MAN.

6  THE PUNISHMENT HE WILL BE FACING WILL BE MORE THAN

7  SUFFICIENT TO GET THE MESSAGE ACROSS TO HIM AND PUNISH HIM

8  FOR HIS DEEDS.  AND I DON'T THINK THE COURT WILL SEE HIM

9  BACK HERE AGAIN OR IN ANY COURTHOUSE, IN THAT EVENT.

10        THE COURT:  MR. BOBO, DO YOU HAVE ANYTHING TO SAY

11 IN MITIGATION OR OTHERWISE BEFORE I PRONOUNCE THE SENTENCE

12 OF LAW UPON YOU?

13        MS. MCCORD:  NO, YOUR HONOR.

14        THE COURT:  FIRST, MR. BOBO.  I KNOW WE ARE

15 GOING --

16        DEFENDANT CHARLES BOBO:  WHAT I WANT TO SAY IS

17 OTHER THAN ME, NOBODY CARES FOR HIM; NOBODY.  THANK YOU.

18        THE COURT:  UH-HUH.  ALL RIGHT.  MS. MCCORD, DO

19 YOU HAVE ANYTHING TO SAY IN MITIGATION OR OTHERWISE BEFORE

20 I PRONOUNCE THE SENTENCE OF LAW UPON YOUR CLIENT?

21        MS. MCCORD:  YES, YOUR HONOR, JUST BRIEFLY.  MS.

22 BOBO, AS YOU HEARD, IS A HARD-WORKING WOMAN, A COMMUNITY-

23 MINDED WOMAN, AND OPENED THE STORE TO SERVE THE COMMUNITY.

24 I THINK THAT SHE FULLY AND COMPLETELY AND TOTALLY ACCEPTS

25 RESPONSIBILITY FOR HER ACTIONS.  HOWEVER, HER MAIN

```
 1   FUNCTION IN THAT STORE WAS TO HELP THE COMMUNITY, AND
 2   THAT'S HOW SHE CAME UPON THE SMALL CHILD WHO WAS BEING
 3   SEVERELY NEGLECTED BY HIS PARENTS AND TOOK HIM INTO THEIR
 4   HOME.
 5        ADDITIONALLY, MS. BOBO HAS NO CRIMINAL HISTORY
 6   WHATSOEVER TO SPEAK OF.  SHE HAS BEEN A MODEL CITIZEN UP
 7   UNTIL THIS POINT.  SHE HAS NO HISTORY OF DRUG ABUSE, DRUG
 8   USE.  HAS NEVER USED METHAMPHETAMINE OR ANY OTHER DRUG,
 9   HAS NEVER MANUFACTURED METHAMPHETAMINE OR ANY OTHER DRUG.
10   AND SO I THINK THAT SPEAKS VOLUMES OF WHAT TYPE PERSON SHE
11   TRULY IS.
12        AND I WOULD LIKE TO SAY THAT SHE UNDERSTANDS THAT
13   SHE HAS PLED GUILTY TO AN OFFENSE, SHE UNDERSTANDS THAT
14   PER HER PLEA AGREEMENT THAT HER SENTENCE CANNOT BE LESS
15   THAN 36 MONTHS AND CANNOT BE MORE THAN 60 MONTHS.  AND I
16   THINK THAT IS -- SHE ACCEPTS THAT, AND THAT IS SUFFICIENT
17   PUNISHMENT FOR MS. BOBO.
18        THE COURT:  MS. BOBO, DO YOU HAVE ANYTHING TO SAY
19   IN MITIGATION OR OTHERWISE BEFORE I PRONOUNCE THE SENTENCE
20   OF LAW UPON YOU?
21        DEFENDANT MARY BOBO:  YES, SIR.  I NEVER INTENDED
22   TO HURT ANYBODY BY ANYTHING THAT I DID.  AND I'M SORRY,
23   YOU KNOW, THAT PEOPLE GOT HURT.  I WOULD NEVER DO ANYTHING
24   INTENTIONALLY TO BRING DISHONOR TO MY FAMILY NOR MY
25   HUSBAND'S FAMILY.  AND SINCE JULY OF LAST YEAR WHEN WE
```

1  WERE ARRESTED, WE HAVE HAD PEOPLE THAT WE WENT TO SCHOOL

2  WITH FROM GRADE ONE AND FRIENDS THAT PEOPLE CLAIMED TO BE

3  OUR FRIEND LITERALLY TURN AND WALK THE OTHER WAY TO KEEP

4  FROM FACING US OR SPEAKING TO US LIKE WE DIDN'T COUNT OR

5  WE DIDN'T MATTER ANYMORE.

6      I AM NOT A TERRIBLE PERSON, AND I'M SORRY, YOU

7  KNOW, FOR WHAT I HAVE DONE.

8      THE COURT:  OKAY.  GOVERNMENT, RECOMMENDATION OR

9  ANYTHING YOU WANT TO SAY?

10     MS. HARDWICK:  YES, YOUR HONOR.  THE GOVERNMENT,

11 YOUR HONOR, FEELS THAT IT IS IMPORTANT TO REMIND THEM AND

12 THEIR FAMILIES, TOO, THAT THE GOVERNMENT IS NOT HERE TO

13 JUDGE THEM ONE WAY OR THE OTHER.  THE GOVERNMENT IS HERE

14 TO ENFORCE THE LAW.  AND I HAVE LISTENED TO SEVERAL PEOPLE

15 OUT THERE, SEVEN SAY THAT IF THEY HAD KNOWN THAT IT WAS

16 AGAINST THE LAW THEY WOULD NOT HAVE DONE IT.

17     WHEN THERE IS A TAPE-RECORDED STATEMENT

18 PARTICULARLY OF MR. BOBO ASKING THE CONFIDENTIAL INFORMANT

19 ARE YOU THE LAW, BECAUSE HE KNEW, AND THAT'S A CLEAR

20 INDICATION TO SHOW THAT THEY KNEW WHAT WAS HAPPENING.

21 THEY ALSO NEED TO KNOW THAT THIS ITEM THAT WAS BEING SOLD

22 AND THE AMOUNT OF TABLETS THAT WERE BEING SOLD FROM THAT

23 STORE ALONE CONTRIBUTED, THEY DIDN'T HAVE TO MANUFACTURE

24 IT, BUT IT CONTRIBUTED TO A LARGE AMOUNT OF

25 METHAMPHETAMINE THAT WAS PUT ON THE STREET THAT AFFECTED A

1  LOT OF LIVES.

2       THIS WAS A LARGE -- I THINK THE COURT HEARD THE

3  TESTIMONY IN THE TRIAL, THE ONE TRIAL THAT WE DID HAVE ON

4  THESE CASES.  THIS WAS A LARGE SALE ITEM IN ALL OF THOSE

5  SMALL STORES IN COVINGTON, COFFEE, AND GENEVA COUNTY.

6  THIS ITEM ALONE MADE MONEY IN THE STORES.  SO THERE WAS A

7  REASON FOR COMMISSION OF THE ITEM, AND THE FAMILY NEEDS TO

8  UNDERSTAND THAT THEY WELL KNEW WHAT THEY WERE DOING.

9       WE UNDERSTAND THAT THEY HAVE A RIGHT TO REQUEST

10  LENIENCY BUT NO ONE SHOULD FORGET THE EFFECT OF SELLING

11  THIS AMOUNT OF PSEUDOEPHEDRINE THAT IS USED TO MANUFACTURE

12  METHAMPHETAMINE.

13       MS. MCCORD:  YOUR HONOR, MAY I RESPOND?

14       THE COURT:  DO YOU HAVE ANY RECOMMENDATION IS

15  WHAT I NEED RIGHT NOW.

16       MS. HARDWICK:  YOUR HONOR, THEIR RANGE IS FIVE

17  YEARS BECAUSE THERE HAS NOT BEEN A MOTION FILED IN THIS

18  CASE FOR COOPERATION.  THE GOVERNMENT DID FILE A MOTION,

19  WHICH IS DOCUMENT 105 IN CHARLES BOBO'S CASE, AND DOCUMENT

20  104 IN MARY BOBO'S CASE FOR THE REDUCTION FOR ACCEPTANCE

21  OF RESPONSIBILITY.

22       THE COURT:  AND I BELIEVE YOUR RECOMMENDATION IS

23  JUST THAT THE GUIDELINE, THAT'S WHAT I ASSUME YOU ARE --

24       MS. HARDWICK:  THE FIVE YEARS, YES, SIR.

25       MS. CHARTOFF:  YOUR HONOR, IF I COULD RESPOND TO

```
 1   ONE POINT THAT I WANTED TO BRING UP BEFORE BUT FORGOT,

 2   WHICH IS THAT MR. BOBO HAS REPEATEDLY MADE OFFERS TO THE

 3   GOVERNMENT TO COOPERATE AND HAS BEEN MAKING THOSE OFFERS

 4   FOR AT LEAST --

 5         THE COURT:  THAT'S SOMETHING YOU SHOULD TAKE UP

 6   WITH THE GOVERNMENT.

 7         MS. CHARTOFF:  YES, YOUR HONOR.  I JUST WANTED

 8   THE COURT TO KNOW THAT HE IS FULLY WILLING.

 9         THE COURT:  DID YOU HAVE SOMETHING ELSE?  LOOK,

10   FOLKS, I UNDERSTAND THE WAY METHAMPHETAMINE WORKS.  THIS

11   IS NOT MY FIRST TIME HANDLING ONE OF THESE CASES.  I

12   UNDERSTAND THE WAY PSEUDOEPHEDRINE SALES WORK.

13         MS. MCCORD:  YES, YOUR HONOR.

14         THE COURT:  YOU CAN SAY ANYTHING YOU WANT ABOUT

15   THAT, BUT --

16         MS. MCCORD:  YES, YOUR HONOR, AND I UNDERSTAND

17   THAT.  HOWEVER, SHE IMPLIED THAT MS. BOBO WELL KNEW

18   THROUGH STATEMENTS THAT MR. BOBO MADE WHEN THE TAPED

19   CONVERSATIONS WITH MS. BOBO CLEARLY IMPLIED SHE MADE --

20         THE COURT:  WOULD YOUR CLIENT LIKE TO WITHDRAW

21   HER GUILTY PLEA?

22         MS. MCCORD:  NO, YOUR HONOR.

23         THE COURT:  LET ME SAY THIS BECAUSE I HAVE HEARD

24   IT REPEATEDLY HERE TODAY, THAT THEY DIDN'T KNOW WHAT THEY

25   WERE DOING.  THE DEFENDANTS HAVE PLED GUILTY TO THE
```

1  OFFENSE.  THEY HAVE ACKNOWLEDGED THAT THEY KNEW WHAT THEY

2  WERE DOING.  IF EITHER OF THE DEFENDANTS WANT TO WITHDRAW

3  THEIR GUILTY PLEA AND SAY WE ARE NOT GUILTY, LET'S GO TO

4  TRIAL, THEN I NEED TO KNOW THAT RIGHT NOW.

5        MS. CHARTOFF:  NO, YOUR HONOR.  AND I WOULD JUST

6  LIKE TO SAY WE DID NOT, NEITHER OF THE DEFENDANTS NOR

7  COUNSEL PREPARE THESE WITNESSES TO SAY WHAT THEY WERE

8  SAYING.

9        THE COURT:  I AM NOT GETTING ON TO YOU BUT THE

10 STATEMENT JUST MADE BY COUNSEL RIGHT THERE WOULD INDICATE

11 TO ME THAT SHE WAS SORT OF SAYING HER CLIENT DIDN'T KNOW

12 WHAT SHE WAS DOING.  IF SHE DOESN'T, SHE NEEDS TO MOVE TO

13 WITHDRAW HER CASE.

14       MS. MCCORD:  YOUR HONOR, I JUST WANTED TO MAKE

15 SURE THAT IT WAS NOT IMPLIED THAT THE STATEMENTS MR. BOBO

16 MADE ARE IMPLICIT TO MS. BOBO.

17       THE COURT:  YEAH, AND I DON'T TAKE IT THAT WAY.

18       ALL RIGHT.  LET ME SAY A FEW THINGS, THE ADVISORY

19 GUIDELINE RANGE IS ADVISORY.  IT'S NOT MANDATORY, IT'S NOT

20 BINDING UPON THE COURT.  I WILL NOTE THAT THE GUIDELINE

21 RANGE BEFORE IT WAS REDUCED BY EFFECT OF THE STATUTE WAS

22 FOR 108 TO 135 MONTHS FOR MS. BOBO, AND 135 TO 168 MONTHS

23 FOR MR. BOBO.  NOW IT'S REDUCED AUTOMATICALLY BECAUSE THE

24 STATUTE IS FOR A MANDATORY 60 MONTHS.  MY JOB HERE TODAY

25 IS TO CALCULATE WHAT IS A REASONABLE SENTENCE BASED UPON

1  THESE PARTICULAR CASES.  THEY ARE DIFFICULT, OBVIOUSLY.  I

2  HAVE TO NOT ONLY CONSIDER AND DO CONSIDER THE CALCULATION

3  OF THE GUIDELINES, THAT IS 60 MONTHS IN BOTH THESE CASES,

4  BUT I ALSO HAVE TO CONSIDER THE FACT THEY ARE SET FORTH IN

5  THE CODE, 18 USC SECTION 3553(A) AND FIND PARTICULARLY

6  IMPORTANT THE PROVISION OF THAT CODE SECTION THAT REQUIRES

7  OR MAKES APPROPRIATE MY SENTENCE TO REFLECT THE

8  SERIOUSNESS OF THE OFFENSE AND TO PROMOTE RESPECT FOR THE

9  LAW AND TO PROVIDE JUST PUNISHMENT FOR THIS PARTICULAR

10 OFFENSE.

11         I HAVE SENTENCED PEOPLE FOR POSSESSING

12 METHAMPHETAMINE.  I HAVE SENTENCED PEOPLE NOT ONLY IN

13 FEDERAL COURT BUT IN STATE COURT FOR MANUFACTURING

14 METHAMPHETAMINE IN THE BACK OF CARS, OR MANUFACTURING

15 METHAMPHETAMINE IN HOTEL ROOMS.  I HAVE SEEN THE EFFECTS

16 OF METHAMPHETAMINE ON PEOPLE.  AND I HAVE NO DOUBT THAT

17 THESE TWO INDIVIDUALS, THESE TWO DEFENDANTS ARE GOOD

18 PEOPLE.  I HAVE NO DOUBT THAT THESE TWO INDIVIDUALS WILL

19 COME OUT IN THE MIDDLE OF THE NIGHT IF THEY ARE ASKED,

20 THAT THEY HAVE DONE GOOD THINGS FOR PEOPLE.  BUT I ALSO

21 HAVE NO DOUBT THAT THEY KNEW WHAT THEY WERE DOING WHEN

22 THEY WERE SELLING THE PSEUDOEPHEDRINE.  I HAVE NO DOUBT

23 THAT WHAT PSEUDOEPHEDRINE IS USED FOR WHEN IT'S SOLD LIKE

24 THAT.  I HAVE NO DOUBT WHAT METHAMPHETAMINE DOES TO PEOPLE

25 IN OUR COMMUNITY.  AND AS A RESULT, I WANT YOU TO

1   UNDERSTAND THAT I AM NOT ANGRY AT YOU, I DON'T DISLIKE

2   EITHER ONE OF YOU.  BUT A SENTENCE THAT'S APPROPRIATE IN

3   THIS CASE, YOU MADE A GUILTY PLEA, YOU ARE NOT CHARGED

4   WITH ALL THE OTHER OFFENSES THAT WERE ORIGINALLY CHARGED

5   AGAINST YOU.  YOU MADE A PLEA AGREEMENT AND GOT AN

6   INFORMATION AGAINST YOU AND YOU PLED GUILTY TO IT.  YOU

7   ARE TELLING ME THAT YOU ARE GUILTY.  AND I HAVE TO

8   CONSIDER WHAT THIS KIND OF CONDUCT DOES TO PEOPLE OUT

9   THERE AND THE NEED TO DETER THIS TYPE OF CONDUCT.  AND

10  THAT'S WHY YOU ARE BEING SENTENCED THE WAY YOU ARE BEING

11  SENTENCED IN THIS CASE.

12          IT'S NOT ANYTHING TO DO WITH ME DISLIKING YOU --

13  IT'S NOT.  I DON'T DISBELIEVE ANYBODY THAT WAS OUT THERE.

14  I THINK EVERYBODY OUT THERE SPOKE FROM THEIR HEART WHAT

15  THEY BELIEVE.  I KNOW THE MOTHERS' JOBS ARE NOT TO GET UP

16  HERE AND SAY I BELIEVE MY CHILD DID SOMETHING WRONG.  THEY

17  ARE UP HERE TO LOVE YOU AND SUPPORT YOU.

18          AND YOU WILL GET OUT OF PRISON.  AND WHEN YOU GET

19  OUT OF PRISON, I TRUST THAT YOU WILL LEARN A LOT FROM THIS

20  AND YOU WILL TURN YOUR LIFE AROUND AND BE AN EXAMPLE.

21          BUT WITH ALL THAT SIDE, PURSUANT TO THE

22  SENTENCING REFORM ACT OF 1984, IT IS THE JUDGMENT OF THIS

23  COURT THAT BOTH DEFENDANTS ARE COMMITTED TO CUSTODY OF THE

24  BUREAU OF PRISONS TO BE IMPRISONED FOR A TERM OF 60

25  MONTHS.  BOTH OF YOU WILL PAY A SPECIAL ASSESSMENT OF

1   $100, WHICH IS DUE IMMEDIATELY TO THE UNITED STATES OF

2   AMERICA.  BASED ON YOUR INABILITY TO PAY A FINE, THE FINE

3   IS WAIVED.

4           UPON YOUR RELEASE FROM IMPRISONMENT, YOU WILL BE

5   PLACED ON SUPERVISED RELEASE FOR A PERIOD OF -- CAN I GIVE

6   THEM THREE YEARS?

7           PROBATION OFFICER:  YES, SIR.

8           THE COURT:  THREE YEARS.  WHILE ON SUPERVISED

9   RELEASE, YOU WILL COMPLY WITH THE MANDATORY AND STANDARD

10  CONDITIONS OF SUPERVISED RELEASE OF RECORD IN THIS COURT

11  AS WELL AS THE FOLLOWING SPECIAL CONDITIONS.

12          YOU WILL SUBMIT TO SEARCH OF YOUR PERSON,

13  RESIDENCE OFFICE OR VEHICLE PURSUANT TO THE SEARCH POLICY

14  OF THIS COURT.  YOU WILL COOPERATE WITH THE PROBATION

15  OFFICER IN THE COLLECTION OF DNA.  I FIND NO IDENTIFIABLE

16  VICTIMS TO INCUR A FINANCIAL LOSS IN THIS CASE.

17          I ASSUME THEY BOTH WANT TO BE HOUSED AS CLOSE TO

18  THEIR FAMILY MEMBERS, AS CLOSE TO OPP AS POSSIBLE?

19          MS. CHARTOFF:  YES, YOUR HONOR.

20          MS. MCCORD:  YES, YOUR HONOR.

21          THE COURT:  I WILL DO THAT.  I HAVE HEARD NOTHING

22  THAT INDICATES THEY HAVE A DRUG PROBLEM THEMSELVES BUT

23  WOULD JUST SIMPLY SELLING IT FOR MONEY.  IS THAT TRUE?

24          MS. CHARTOFF:  YES, YOUR HONOR.

25          MS. MCCORD:  YES, YOUR HONOR.

```
 1              THE COURT:  OF COURSE, THEY CAN ACTUALLY REQUEST,

 2    I GUESS, THE DRUG TREATMENT IF THEY GET IN PRISON, OR

 3    CERTAINLY REALIZE THEY HAVE THESE PROBLEMS AND WILL DEAL

 4    WITH THAT ACCORDINGLY.  I WILL ASK THEY BE HOUSED AS CLOSE

 5    TO OPP AS POSSIBLE.

 6              IS THERE ANYTHING LEFT PENDING IN THIS CASE?

 7              MS. HARDWICK:  YOUR HONOR, THE INDICTMENT, AND

 8    THE GOVERNMENT WOULD MOVE TO DISMISS THE PENDING

 9    INDICTMENT AND WILL FILE A WRITTEN MOTION AS WELL.

10              THE COURT:  ALL RIGHT.  IT WILL BE DISMISSED ON

11    YOUR MOTION WITH PREJUDICE.

12              ARE THERE ANY OBJECTIONS TO THE SENTENCE, MANNER

13    IN WHICH THE SENTENCE WAS PRONOUNCED OR IMPOSED OTHER THAN

14    THOSE PREVIOUSLY STATED?

15              FROM THE GOVERNMENT?

16              MS. HARDWICK:  NO, YOUR HONOR.

17              THE COURT:  FROM THE DEFENDANT, CHARLES BOBO?

18              MS. CHARTOFF:  NO, YOUR HONOR.

19              THE COURT:  FROM DEFENDANT MARY BOBO?

20              MS. MCCORD:  NO, YOUR HONOR.

21              THE COURT:  YOU BOTH HAVE THE RIGHT TO APPEAL THE

22    SENTENCE IMPOSED IF YOU BELIEVE IT IS IN VIOLATION OF THE

23    LAW; HOWEVER, YOU MAY HAVE WAIVED SOME OR ALL YOUR RIGHTS

24    TO APPEAL AS PART OF YOUR PLEA AGREEMENTS.  IF YOU DID, IN

25    FACT, WAIVE SOME OR ALL OF YOUR RIGHTS TO APPEAL AS PART
```

1   OF YOUR PLEA AGREEMENT, SUCH WAIVERS ARE GENERALLY FOUND

2   TO BE ENFORCEABLE.  IF YOU BELIEVE THEY ARE UNENFORCEABLE,

3   YOU CAN PRESENT THAT THEORY TO THE APPROPRIATE APPELLATE

4   COURT BUT, WITH FEW EXCEPTIONS, ANY NOTICE OF APPEAL MUST

5   BE FILED WITHIN TEN DAYS OF JUDGMENT BEING ENTERED IN YOUR

6   CASE.  IF YOU ARE UNABLE TO PAY THE COST OF APPEAL, YOU

7   MAY APPLY FOR LEAVE TO APPEAL IN FORMA PAUPERIS AND FOR

8   APPOINTMENT OF COUNSEL.

9           IF YOU ARE GRANTED THAT, THEN THE CLERK OF COURT

10  WILL ASSIST YOU IN PREPARING AND FILING NOTICE OF APPEAL.

11          DO EITHER ONE OF YOU HAVE ANY QUESTIONS?

12          DEFENDANT MARY BOBO:  NO, SIR.

13          DEFENDANT CHARLES BOBO:  NO, SIR.

14          THE COURT:  REQUEST THEY BE TAKEN INTO CUSTODY OR

15  ALLOWED TO TURN THEMSELVES IN?

16          MS. HARDWICK:  YOUR HONOR, THERE IS NOT A

17  REQUIREMENT.  IT IS NOT A MANDATORY --

18          THE COURT:  IS THERE A REQUEST FROM THE

19  GOVERNMENT THEY BE TAKEN INTO CUSTODY?

20          MS. HARDWICK:  NO REQUEST.

21          THE COURT:  THEN YOU WILL BE ALLOWED TO REMAIN ON

22  BOND, THE SAME BOND THAT YOU ARE ON.  YOU WILL SURRENDER

23  BY 2:00 P.M., JULY 17TH, 2006, TO THE INSTITUTION

24  DESIGNATED BY THE FEDERAL BUREAU OF PRISONS.  HOWEVER, IF

25  THERE IS NO SUCH DESIGNATION, THEN YOU WILL REPORT TO THE

```
 1  MARSHAL'S OFFICE HERE IN THE MIDDLE DISTRICT.

 2           ALSO, IF YOUR DESIGNATION IS SOME PLACE ON THE

 3  OTHER SIDE OF THE UNITED STATES, YOU MAY WANT TO GET WITH

 4  YOUR ATTORNEY AND REPORT HERE AS OPPOSED TO THERE.  BUT

 5  IT'S YOUR RESPONSIBILITY TO MAKE SURE THAT YOU REPORT ONE

 6  OR THE OTHER.  ANY QUESTIONS?

 7           MS. MCCORD:  NO, YOUR HONOR.

 8           THE COURT:  TAKE TEN MINUTES BEFORE WE TAKE UP

 9  THE NEXT CASE.

10           MS. MCCORD:  THANK YOU, YOUR HONOR.

11           THE COURT:  GOOD LUCK.

12               (END OF PROCEEDINGS.)

13  *************************************************************

14                  C E R T I F I C A T E

15  *************************************************************

16     I HEREBY CERTIFY THAT THE FOREGOING TRANSCRIPT IN THE

17  ABOVE-STYLED CAUSE IS TRUE AND ACCURATE.

18

19  \S\LINDY M. FULLER, RMR, CRR          JUNE 18, 2007

20  FEDERAL OFFICIAL COURT REPORTER

21

22

23

24

25
```

